No. 31,080.

CITIES SERVICE GAS COMPANY, *Appellant,* v. THE RIVERSIDE
DRAINAGE DISTRICT, *Appellee.*

(20 P. 2d 520.)

Opinion filed April 8, 1933.

*James W. Finley, Hayes McCoy, Robert E. Cullison* and *Glenn W. Clark,*
all of Bartlesville, Okla., for the appellant.

*Jean Madalene,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a condemnation proceeding where land
owned by the Cities Service Company was condemned and appro-
priated for the purposes and uses of the Riverside drainage district,
under the drainage act of 1905, R. S. 24-401 *et seq.* An appeal
from the award was taken to the district court where a trial was had
with a jury, which returned a verdict in favor of the Cities Service
Company, assessing the amount of its recovery at $40 when it was
asking $2,389.17. The Cities Service Company appeals.

A tract of about twelve acres adjoining the city of Wichita was
owned by the appellant, on which it had erected a gas compressor
station and some other improvements. Across this tract there was

a small natural watercourse named the Big Slough, and twelve inches under the bed of the watercourse the appellant had a pipe line in which gas was transported across the country to Kansas City and on to northern markets. That part of the Big Slough where it was crossed by the pipe line was wholly within appellant's tract, and the tract was within the boundaries of the drainage district. The drainage district deemed it necessary and determined to widen and deepen the Big Slough. Learning of this purpose, the representatives of the appellant had a conference with the officers of the drainage district as to the scope and plan of the improvement which would widen and deepen the stream and require the removal of the pipe line. The appellant then prepared to locate its pipe line at the crossing of the watercourse. It was found necessary to change and lower about 225 feet of the pipe line, and because of the hazard in handling a gas pipe carrying a pressure of from three hundred to four hundred pounds per square inch, it was found necessary to employ skilled labor, and it took twenty-five men about nine days to make the change. Proof was made that the work was all done in the most economical way possible. The reasonable pay for such labor was said to be $4 per day for each nine-hour day, and that the work of lowering the line cost $801.76 for labor and $877.78 for material. The balance of appellant's claim was made up of freight, express, teams and trucks, and $110 for a man to supervise the work during its progress. With their verdict the jury returned answers to special questions that were submitted, as follows:

"1. Do you find that it was necessary, in order for appellant to maintain its property in a similarly usable condition, to replace its eighteen-inch pipe line below the bed level of the drainage ditch involved herein? A. Yes.

"2. If you find that appellee is entitled to have deducted from your award, if any, some amount for special benefits, you will state that amount of deduction you have allowed for such benefits. A. ——.

"3. If you find appellee to be entitled to deductions for special benefits to the appellant, you will state what constitutes such special benefits. A. ——.

"4. How much of the 0.74 acres of land taken by the appellee was not within the natural watercourse at the time it was taken? A. Approximately one-half acre.

"5. What do you find to be the fair and reasonable market value per acre, in June, 1930, of the portion of the tract taken not within said natural watercourse? A. $80 per acre.

"6. (a) What do you allow for labor, if any, in removing pipe? A. (a) ——.

(b) For material? A. (b) ——.

(c) For miscellaneous expense? A. (c) ——."

The court in an instruction to the jury treated the pipe line as originally placed in the bed of the stream as an obstruction and, in effect, instructed that the plaintiff was not entitled to compensation for removing and replacing the pipe line. The following is the instruction which raises the principal questions in controversy between the parties:

"For your guidance in determining the amount of damage, if any, the appellant is entitled to recover herein, you are instructed that at the time the Riverside drainage district appropriated land therefor and constructed a drainage ditch through the appellant's land, it had the right to widen and deepen to the extent necessary for proper drainage the channel of the then existing natural watercourse known as the Big Slough, throughout its course over appellant's land, and to condemn and cause to be removed therefrom any obstructions placed in said channel or between the banks of said natural watercourse, without compensating the appellant therefor, and in this connection you are instructed that neither the expense incurred by appellant in removing and replacing its pipe line which had theretofore been laid in said natural watercourse, nor the expense incurred in removing and replacing its pipe line outside of the limits of said watercourse, in so far as such expense was necessary and incident to the removal and replacement of that part of its pipe line that had theretofore been laid in said natural watercourse, can be recovered by appellant in this action; nor can appellant recover anything for that portion of the land appropriated by appellee for the drainage ditch constructed by it which was theretofore land lying between the banks of said natural watercourse.

"You are further instructed that the expense of appellant made necessary by the condemnation and appropriation of that part of appellant's land lying outside of the limits of said natural watercourse and paid or incurred in connection with the removal and replacement of the appellant's pipe line theretofore laid outside of the limits of said natural watercourse, as said watercourse existed prior to the construction of said drainage ditch, in so far as such expense was not necessary and incident to the removal and replacement of that part of its pipe line that had theretofore been laid in said natural watercourse, is a proper item of damages to be recovered by appellant herein, and should you find any such expense to have been incurred by appellant, your verdict will include such reasonable sum as you may find has been so incurred by appellant."

The plaintiff requested the following instruction, which was refused:

"The law is that a drainage district cannot appropriate private property without just compensation being given, therefore, the meaning of the expression 'taking of property' is not confined to the actual physical appropriation of land or improvements, but includes the causing of an owner of land as a matter of necessity to move, alter, relay and construct improvements,

fixtures and appurtenances to its land to make itself whole or place itself in a similarly beneficial position with regard to the use of all its property as a whole as it was before the appropriation."

The plaintiff was the owner of the twelve-acre tract of land, including the bed of the watercourse. It was a nonnavigable stream, and the plaintiff owned the banks and beds of the creek and the right to use them subject, of course, to the rights of riparian owners in the flow of the water. (*City of Emporia v. Soden*, 25 Kan. 588; *Wood v. Fowler*, 26 Kan. 682; *Clark v. Allaman*, 71 Kan. 206, 80 Pac. 571; *Dana v. Hurst*, 86 Kan. 947, 122 Pac. 1041; *Railway Co. v. Shriver*, 101 Kan. 257, 166 Pac. 519; *Piazzek v. Drainage District*, 119 Kan. 119, 237 Pac. 1059; *People v. Economy Power Co.*, 241 Ill. 290.)

The pipe line of plaintiff was an improvement of a permanent nature, was originally placed twelve inches below the bed of the stream across which it was laid, and it could not be regarded as an obstruction when it was placed there. The plaintiff was as much entitled to damages for the removal and replacement of the pipe line as it would be if it had been a substantial building on the bank of the watercourse which required removal before the widening and deepening process was begun by the drainage district, and it would hardly be contended that the owner of the building in such a case would not be entitled to compensation. The drainage district had announced its purpose to deepen and widen the watercourse, and the plaintiff, as was its duty, proceeded with the relocation of the pipe line, a process of an expert character, thus to adapt the property to the plan and project of the drainage district. The drainage district is given the power and control over natural watercourses and to widen and deepen them as may be necessary for drainage or sanitary purposes. It may take private property for public use by the exercise of eminent domain. It may enjoin the placing of obstructions which prevent the flow of water in the watercourse and have them adjudged to be a public nuisance. In the statute it is provided that any person owning the lands condemned and appropriated may have an appeal from the award of the commissioners as to the value of the lands, crops, buildings or other improvements, and for all other damages sustained by reason of the appropriation. In such an appeal the district may contest the title of the claimant to the land, also whether an obstruction has been wrongfully placed in the channel of the stream, or that for any reason the appellant

is not entitled to compensation. (R. S. 1931 Supp. 24-407; R. S. 24-443.)

Defendant seeks to justify the instruction given by the court on the theory that the taking and appropriation was an exercise of the police power of the state, and that the plaintiff holds its property, which is charged with a public interest, subject to an exercise of the police power, and that in such cases private rights may be invaded without compensation. The rule applies in some emergencies, such as the destruction of property to avert impending peril, as to prevent the spread of fire, the washing out of a highway during a freshet or flood, and the abatement of a nuisance. There are cases, too, where franchises have been granted to a street-car company, gas company, telephone company, and the like, to place rails, poles and pipes in public streets and other highways, and which they can be required to move without compensation. The primary use of the highways is for public travel, and the companies accept the grants and occupy the highways with their utilities on the implied and reserved power of the city to require their removal when the streets are needed for the higher purpose of public travel and the public safety. Property cannot be appropriated without compensation under the guise of the police power. If the requirements are unreasonable and arbitrary and operate to deprive an owner of his property within the purview of the law of eminent domain, they will not be upheld. In an ordinary case of condemnation and appropriation of an owner's property, as in the present case, the constitutional right to compensation cannot be ignored or denied.

The drainage district is an administrative agency which has broad powers in the control of watercourses and in measures to effect proper drainage, but its orders, if unreasonable and arbitrary, are not beyond judicial review. In *Drainage District v. Railway Co.*, 99 Kan. 188, 161 Pac. 937, it was said:

"The plaintiff board is an administrative agency. Within its powers it is supreme. But its orders must be reasonable. And it cannot be the final judge of the reasonableness of its own orders. That would be tying administrative and judicial powers in one hand, and this our own constitution will not allow. (Citing cases.) . . . It may therefore be said generally that when the state creates an agency to serve its public needs and confers administrative powers upon it, whatever be the language of the statutes conferring such powers, a just and reasonable exercise of such powers is intended, and the power to make or exercise unreasonable, arbitrary and confiscatory orders is not intended. Such is the spirit of our own bill of rights and of the fourteenth

amendment, which have been expounded times without number by this court and by the federal supreme court." (pp. 204, 205.)

Cases cited by plaintiff that the city may require a corporation occupying the streets to lower tracks and a gas and water pipe, by reason of changes of grades of streets, without being entitled to damages from the city, like that of *Scranton Gas Co. v. Scranton City,* 214 Pa. St. 586, are not applicable here. The city had the superior and reserved power in the streets and could exercise the police power to require changes for the convenience and safety of the public without paying compensation to a corporation holding a grant or easement over the street. Nor do cases cited by defendant apply where appropriations are made on a navigable river where the owner has no title in the bed of the same. In respect to the taking of private property from one party for the use and benefit of another under the police power,. it was said by Mr. Justice Holmes, in *Penna. Coal Co. v. Mahon,* 260 U. S. 393:

"The protection of private property in the fifth amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the fourteenth amendment. (Citing cases.) When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the constitution of the United States.

"The general rule, at least, is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. It may be doubted how far exceptional cases, like the blowing up of a house to stop a conflagration, go—and if they go beyond the general rule, whether they do not stand as much upon tradition as upon principle. . . . We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." (pp. 415, 416.)

In *Reagan v. Farmers' Loan & Trust Co.,* 154 U. S. 362, it was said, among other things, by Mr. Justice Brewer:

"The equal protection of the laws which, by the fourteenth amendment, no state can deny to the individual, forbids legislation, in whatever form it may be enacted, by which the property of one individual is, without compensation, wrested from him for the benefit of another or of the public." (p. 399.)

Further along in the opinion it was said:

"Is it just to deprive one party of all compensation in order that another may make some profit?" (p. 409.)

And again:

"The equal protection of the laws—the spirit of common justice—forbids that one class should by law be compelled to suffer loss that others may make gain." (p. 410.)

We conclude that the plaintiff was entitled to recover not only the value of the land actually taken, but the reasonable expense of the relocation of the pipe line made necessary by the improvement of the watercourse on the plans of the drainage district.

There is complaint of the introduction of a resolution of the drainage district passed by the district after the condemnation, more than a year after the award of the commissioners, and shortly before the trial of the appeal, to the effect that the pipe line was an obstruction, a nuisance to be removed, which was received over the objection of the plaintiff. That part of the resolution was not admissible. An issue in the case cannot be determined by the resolution of one of the parties made in its own behalf. It was self-serving in character, and the case was to be tried on the facts and law presented at the trial on the issues that had been formed.

Because of the error in the instructions there must be a reversal of the judgment and a new trial granted.

There are some other objections, but the view we have taken of the case makes it unlikely that the rulings will be repeated.

The judgment is reversed and the cause remanded with the direction to grant a new trial.