No. 31,804

The State Highway Commission of Kansas, *Plaintiff*, v. Panhandle Eastern Pipe Line Company, *Defendant*.

(29 P. 2d 1104.)

Opinion filed March 10, 1934.

*Wint Smith,* attorney for the state highway commission, and *Otho W. Lomax,* of Cherryvale, for the plaintiff.

*G. J. Neuner,* of Kansas City, Mo., for the defendant.

The opinion of the court was delivered by

Burch, J.: The action is one of mandamus, commenced by the state highway commission, to require the pipe-line company to adjust its pipe lines and other structures to highway needs.

The parties have collaborated in a most commendable manner in preparation of the motion for the alternative writ and the answer. Issues of fact have been eliminated, and the highway commission's motion for judgment on the pleadings raises the legal question on which the parties differ. A summary of the pleadings sufficient to indicate the nature of the controversy follows.

The state highway commission is a department of the state government having authority over the state highway system. It possesses power and is charged with duty to establish, construct and maintain, and to alter, vacate, reëstablish and reconstruct highways in every county of the state. The pipe-line company is a Delaware

corporation, engaged in the business of transporting natural gas by pipe line from gas fields of Texas, Oklahoma and other states, through the states of Kansas and Missouri and other states. In prosecution of its business, which is both interstate and intrastate, it owns, maintains and operates a system of pipe lines, and in connection therewith telephone and telegraph lines. The pipe-line company's lines are all located on its own rights of way, procured from landowners, and none of the lines is located on, along, or across any previously existing highway.

The highway commission is engaged in making certain necessary highway improvements. These improvements consist in widening existing highways and in constructing new highways. In making these improvements the highway commission encounters the lines of the pipe-line company. The highway commission has acquired rights of way for the highway improvements from landowners, but has not obtained consent of the pipe-line company to cross or occupy its rights of way.

The highway improvements necessitate certain changes in the pipe-line company's lines. In some instances it is necessary the pipe line be lowered and encased. In other instances it is necessary the pipe line be encased. In other instances it is necessary the pipe line and telephone line be removed to the outer edge of right of way newly acquired by the highway commission for the purpose of widening existing highways. None of the changes will require the pipe-line company to acquire any new or additional right of way.

The highway commission has prepared plans and specifications for the changes described. The highway commission is not so well equipped to make the changes as the pipe-line company, and the work of making the changes should be done by the pipe-line company's experts. The cost will be in the aggregate not less than $5,460. The highway commission has required the pipe-line company to make the changes at its own expense. The pipe-line company is willing to make the changes according to the plans, but not at its own expense.

The pipe-line company contends that, because its rights of way were acquired and its structures were installed before the present highway rights of way had been obtained and the present improvements had been initiated, it is entitled to compensation for all necessary expenditures incurred in making an adjustment of its private

use to the later public use of the same rights of way. Certain decisions of this court are cited in support of the contention.

In a series of cases beginning with *K. C. Rld. Co. v. Comm'rs of Jackson Co.*, 45 Kan. 716, 26 Pac. 394, and ending with a *per curiam* decision in *S. K. Rly. Co. v. Comm'rs of Johnson Co.*, 52 Kan. 138, 34 Pac. 396, it was held that when a highway was constructed across an existing right of way, the railroad company was entitled to damages. These cases were decided by a divided court and, as the court subsequently observed in the opinion in the case of *State, ex rel., v. Railway Co.*, 95 Kan. 22, 27, 147 Pac. 801, were against the great weight of authority. The decisions simply gave literal effect to the eminent-domain statute providing for damages, and are no longer controlling because of enactment of the present highway law regulating highway crossings of railroads under the state's police power.

The pipe-line company refers to the case of *City of Wichita v. Wichita Union Terminal Rly. Co.*, 127 Kan. 855, 275 Pac. 171. In that case a city street, which did not cross a railroad right of way, was vacated. Afterwards the street was reopened. Then the city undertook to compel the railroad company to construct a subway under its tracks, at its own expense. So far as the evidence disclosed, there was not then and never had been a street which crossed the railroad right of way at the location of the proposed subway, and the subway would not be on any street.

The pipe-line company refers to the case of *Cities Service Gas Co. v. Riverside Drainage Dist.*, 137 Kan. 410, 20 P. 2d 520. In that case a small stream crossed a twelve-acre tract of land owned by the gas company, on which was located its compressor station. The gas company owned the bed and banks of the stream. Beneath the bed of the stream the gas company maintained a large pipe line for transportation of natural gas. The tract was within a drainage district which had power to widen and deepen the stream. Desiring to enlarge the watercourse, the drainage district instituted condemnation proceedings under a statute providing for appraisal of land taken, and assessment of other damages sustained by landowners, to be paid by the drainage district. The gas company was put to great expense ($2,389.17) in adapting its high-pressure pipe line to the situation created by enlargement of the watercourse, and appealed from the award of damages. The trial in the district court was had on the theory the gas company was entitled to damages,

but the court misinstructed the jury with respect to ascertainment of damages. One instruction was based on the theory the gas company did not own the bed of the stream, another instruction was based on the theory the pipe line was an obstruction of a natural watercourse, and the jury was instructed the gas company could not recover damages consisting of expense of removing and replacing the pipe line to accord with the drainage-district improvement.

When the case reached this court an effort was made to justify the instruction on the theory of exercise of police power. In the opinion it was said private property may not be appropriated without compensation under guise of the police power, and it was further said:

"In an ordinary case of condemnation and appropriation of an owner's property, as in the present case, the constitutional right to compensation cannot be ignored or denied." (p. 414.)

The following excerpts from the opinion recognized phases of exercise of police power over use of streets and highways:

"There are cases, too, where franchises have been granted to a street-car company, gas company, telephone company, and the like, to place rails, poles and pipes in public streets and other highways, and which they can be required to move without compensation. The primary use of the highways is for public travel, and the companies accept the grants and occupy the highways with their utilities on the implied and reserved power of the city to require their removal when the streets are needed for the higher purpose of public travel and the public safety.

"Cases cited by plaintiff that the city may require a corporation occupying the streets to lower tracks and a gas and water pipe, by reason of changes of grades of streets, without being entitled to damages from the city, like that of *Scranton Gas Co. v. Scranton City,* 214 Pa. St. 586, are not applicable here. The city had the superior and reserved power in the streets and could exercise the police power to require changes for the convenience and safety of the public without paying compensation to a corporation holding a grant or easement over the street." (*Cities Service Gas Co. v. Riverside Drainage Dist.,* 137 Kan. 410, 414, 415, 20 P. 2d 520.)

Because the proceeding was an ordinary condemnation proceeding, and not a proceeding under the police power of the state, the judgment of the district court was reversed, and the cause was remanded for a new trial.

The highway commission is given power to condemn land or any interest therein, such as the pipe-line company's easements, for highway purposes. The power is to be exercised in accordance with the

general eminent-domain statute, which provides for assessment and payment of damages. In this instance, however, the requirements of the state highway commission with respect to the pipe-line changes were not made in or in connection with any eminent-domain proceeding, and condemnation cases may be left at one side.

Paragraph 5 of the motion for the writ contains the following:

"It is necessary and in the interest of public safety that at such points of intersection the pipe lines and telephone lines of the pipe-line company be changed, lowered, encased or moved, all in accordance with the plans and specifications adopted and approved by the highway commission for the completion of said highway improvement."

The answer of the pipe-line company contains the following:

"Answering the allegations of paragraph 5 of said motion, defendant . . . admits the necessity for the construction of such highways as alleged; admits that at various points along said proposed highways the same will cross and intersect privately owned rights of way of the defendant, which rights of way or easements are being used and occupied by the defendant for the purpose of carrying on its business; admits the necessity of changing, lowering, encasing, or moving of defendant's pipe lines and telephone lines, as alleged by plaintiff, if new highways are constructed and opened for the use of the public at the locations mentioned and described."

What the highway commission seeks to do is to execute the police power of the state to make public travel on the highways safe. Reasonable regulations to that end may be enforced without compensation to co-users of the highway whose structures make public travel unsafe; and because the public use is paramount and public safety is the desideratum, it makes no difference whether the highway was established before or after the privately owned structures were established.

The principles just stated have been approved and applied in decisions of the supreme court of the United States. The case of *Denver & R. G. R. R. Co. v. Denver,* 250 U. S. 241, involved removal of a railroad track from a street crossing. The opinion contains the following reference to previous cases:

"The scope of the power and instances of its application are shown in the decisions sustaining regulations (a) requiring railroad companies at their own expense to abrogate grade crossings by elevating or depressing their tracks and putting in bridges or viaducts at public crossings, *Northern Pacific Ry. Co. v. Duluth,* 208 U. S. 583; *Chicago, Milwaukee & St. Paul Ry. Co. v. Minneapolis,* 232 U. S. 430; *Missouri Pacific Ry. Co. v. Omaha,* 235 U. S. 121; (b) requiring a railroad company at its own cost to change the location of a track and also to elevate it as a means of making travel on a highway safe, *New York & New*

*England R. R. Co. v. Bristol,* 151 U. S. 556; (*c*) prohibiting a railroad company from laying more than a single track in a narrow, busy street although its franchise authorized it to lay a double track there, *Baltimore v. Baltimore Trust Co.,* 166 U. S. 673; and (*d*) requiring a gas company whose mains and pipes were laid beneath the surface of a street under an existing franchise to shift them to another location at its own cost to make room for a public drainage system, *New Orleans Gas Light Co. v. Drainage Commission,* 197 U. S. 453." (p. 244.)

In the New Orleans Gas Light Co. case, just cited, the headnotes summarize the decision as follows:

"The drainage of a city in the interest of the public health and welfare is one of the most important purposes for which the police power can be exercised.

"Every reason of public policy requires that grants in the subsurface of streets shall be held subject to such reasonable regulation as the public health and safety may require.

"Uncompensated obedience to a regulation enacted for the public safety under the police power of the state is not a taking of property without due compensation.

"Under the facts of this case, the changing of the location of gas pipes at the expense of the gas company to accommodate a system of drainage, which has been upheld by the state court as an execution of the police power of the state, does not amount to a deprivation of property without due process of law." (*New Orleans Gas Co. v. Drainage Comm.,* 197 U. S. 453.)

The case of *Erie R. R. Co. v. Public Util. Comm'rs,* 254 U. S. 394, and cases consolidated with it, involved elimination of railroad grade crossings, removal of water mains, and removal of a telegraph line. The opinion by Justice Holmes refers to previous cases, and contains illuminating discussion of principles.

Since the pipe-line company persistently contends it may not be compelled to adapt, at its own expense, its use of the highway to safe public use, because it was on the ground first, it may be well to quote the summary of a portion of the opinion in the Erie case contained in the headnote:

"A state may require a railroad company to do away with grade crossings of public streets, whether laid out before or after the construction of the railroad, and may place upon the company the expense of executing the state's plan to accomplish this by running the streets. over or beneath the tracks." (¶ 1.)

The pipe-line company contends it may not be compelled to obey the highway commission's regulations without a statute authorizing the regulations. There is no contention that exercise of the state's police power over the subject may not be committed to the state

highway commission, and this was in fact done by chapter 225 of the Laws of 1929. Sections 3 and 8 of the chapter read, in part, as follows:

"The state highway commission shall designate, adopt and establish and may lay out, open, relocate, alter, vacate, redesignate and reëstablish highways in every county in the state, the total mileage of which shall not exceed 8,690, . . . The state highway system thus designated shall be constructed, improved, reconstructed and maintained by the state highway commission from funds hereinafter and otherwise by law provided." (§ 3.)

"The state highway commission is authorized to perform all work, . . . incident to the construction, improvement, reconstruction and maintenance of the state highway system . . . and shall take such steps as will give the provisions of this act full force and effect . . ." (§ 8.)

These are broad grants of power, and were intended to embrace all details essential to effective establishment, construction and maintenance of the state highway system. The purpose was to have a highway system constructed in such manner that use of it would not be dangerous to the traveling public. Provision was made for an engineering department of the highway commission, and it was contemplated the engineers' plans for construction of any highway would include whatever was necessary to appropriate and safe construction. As indicated, the highway commission was authorized to do the work.

In section 15 of the act specific authority was given to the highway commission to compel steam and electric railroads to construct grade crossings at their own expense. Specific authority was also given to compel such railroads to construct viaducts, tunnels, underpasses and bridges for the safety of the general public. It was provided that for such work the highway commission may pay what in its judgment would be a fair and equitable proportion of the cost, not exceeding 50 per cent.

Paragraph 16 relates to telegraph, telephone and electric transmission lines, and to pipe lines conveying oil, gas and water. A copy of the section is appended to this opinion. The statute took effect on April 1, 1929. The pipe-line company's rights of way were acquired in 1930, and its lines were constructed in 1930 and 1931. The highway commission acquired its rights of way over the same lands for highway purposes in 1933. The pipe-line company contends the statute has no application to highways established after the act took effect which encounter existing pipe lines. The question thus raised is one of statutory interpretation.

Section 16 is readily divisible into three parts, connected by the conjunction "and." Omitting all structures except pipe lines, omitting the conjunctions, stating and numbering each part separately, and omitting the concluding portion of the third part, the statute reads:

"1. Whenever any corporation created . . . for the purpose of constructing and maintaining lines . .. . for the purpose of transporting . . . · gas . . . by pipe lines . . . . shall construct or maintain pipe lines . . . along, upon or across any state highway, such . . . pipe lines shall be located upon that part of the right of way of said state highway designated by the state highway commission.

"2. The state highway commission is authorized and empowered to require the removal of . . . pipe lines . . . now upon state highways from the present location on said state highways to such part of the right of way of said state highways as the state highway commission shall designate.

"3. If said corporation, upon receiving notice of the requirement of the state highway commission that said . . . pipe lines . . . be moved as herein provided, fails to comply with such requirement of the state highway commission, the state highway commission may remove said . . . pipe lines . . . to such place on the right of way of said state highways as may be designated by the state highway commission, and the cost of such removal shall be paid to said state highway commission by said . . . corporation upon a statement of cost being furnished to said . . . corporation."

In support of its contention the pipe-line company directs special attention to the second division of the section, and says the language is limited to removal of pipe lines "now on said highways from their present locations." The argument is that removal of an existing line from an existing highway is something entirely different from removal of an existing line when a new highway crosses or occupies the right of way. It is said removal in the former instance may be accomplished by exercise of the police power, but removal in the latter instance must be accomplished by condemnation.

The distinction indicated was the basis for the old contention that a new highway could not cross a railroad right of way without payment of compensation, and is unsound. As in the case of railroads, whether the pipe line is established first or the highway is established first, the power to regulate the pipe line is the same. If the pipe line came first, it is not deprived of right of way or continued use; but the common use of the same right of way for pipe-line purposes and highway purposes may be regulated by exercise of the police power for protection of the traveling public. Assuming that the words "now" and "present," appearing in the second subdivision of the section, are to be accorded their literal meaning, they

were not inserted for the purpose of discriminating between old highways and highways to be constructed in the future.

The act of 1929 discloses it was passed to meet the needs of social and economic conditions which had been revolutionized through perfection of the motor vehicle. As indicated above, the highway commission was charged with establishment of a state-wide system of improved highways reaching a possible length of 8,690 miles. This system would carry not only Model T's but the great interstate and intrastate passenger busses and freight trucks. Old highways were to be relocated and reconstructed, and new highways were to be located and constructed. There would necessarily be contacts with lines of railroads, with telegraph, telephone, and electric transmission lines, and with pipe lines for transportation of oil, gas and water. There would be contacts of both old and new highways with old and new lines. The general grant of power to deal effectively with an enterprise of this magnitude in the interest of the public convenience and safety has been discussed, and the statute is not to be interpreted in any narrow, technical or illiberal manner. Established occupation of existing highways by pipe lines was given no immunity from regulation. The greatest menace to safety was the grade railroad crossing. In providing for regulation of such crossings, no distinction was made between existing highways and future highways across existing tracks. The pipe-line company ventures no argument grounded on purpose of the act or nature of the subject for an exception to regulation of its pipe line, and the need of regulation is precisely the same whether the pipe line or the highway first arrives at a given locality.

The first subdivision of section 16 of the statute provides in effect that whenever a pipe line is constructed along, upon or across any highway, its location is subject to control by the highway commission. Regulation of original construction of a pipe line is thus provided for. But the section also provides that whenever a company shall maintain a pipe line upon, along or across any highway, location is subject to regulation.

The motion for the writ alleges and the answer admits the following:

1. The highway commission is engaged in improving, widening, relocating, constructing and reconstructing certain highways.

2. The highway commission has procured rights of way for the improvements.

3. Plans and specifications for the improvements have been prepared and adopted. The motion states that contracts have been let, but admission of this fact is not specifically made in the answer.

4. The motion states that at various points the highway rights of way which have been secured lie across and intersect the rights of way of the pipe-line company. The answer admits that the "proposed highways" lie across and intersect the pipe-line company's rights of way. The court construes "proposed highways" to embrace highway rights of way which have admittedly been procured.

5. The highway commission has prepared and furnished to the pipe-line company plans and specifications for the changes necessary at the points where rights of way overlap.

With route fixed, right of way procured, plans adopted, and the highway commission engaged in executing them, the new and widened highways are, for all purposes of the act, established and existing highways, upon which the pipe-line company maintains its pipe lines, and location of the pipe lines is subject to regulation by the highway commission.

Besides what has been said, the whole act is prospective in its operation. Under a rule for interpretation of statutes in force in this state, words which literally refer to the time a statute takes effect may be read as applicable to the situation existing at the time contemplated action is to be taken. (*State, ex rel., v. City of Lawrence,* 101 Kan. 225, 165 Pac. 826.) If, as suggested in the case just cited, the word "already" be substituted for the word "now," in the second subdivision of the section, there would be no sound basis for a claim that the pipe-line company's pipe line is exempt from regulation. Such an exemption would be out of harmony with the whole spirit and purpose of the act, and the court holds the statute should be read to deny the exemption.

The pipe-line company contends a grant of power to the highway commission to require removal of structures might be extended to removal of a structure such as a compressor station. The statute grants no such power. The highway commission is not attempting to exercise any such power and, if it were, the court ventures the dictum the highway commission could be enjoined.

The pipe-line company's answer asserts the changes required by the highway commission are arbitrary and unreasonable because of the enormous cost of the required changes. There is no contention

the cost is excessive in view of the character and amount of work to be done. Necessity for the changes in the interest of public safety is admitted. In the case of *Erie R. R. Co. v. Public Util. Comm'rs*, 254 U. S. 394, referred to above, the railroad company asserted that if any more changes were required the company would soon be bankrupt. In the opinion the court said:

"Grade crossings call for a necessary adjustment of two conflicting interests—that of the public using the streets and that of the railroads and the public using them. Generically the streets represent the more important interest of the two. There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads, vital as they are, hardly can be called to the same extent. Being places to which the public is invited and that it necessarily frequents, the state, in the care of which this interest is and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made dangerous to the public, whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power, or, to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires. It is said that if the same requirement were made for the other grade crossings of the road it would soon be bankrupt. That the states might be so foolish as to kill a goose that lays golden eggs for them, has no bearing on their constitutional rights. If it reasonably can be said that safety requires the change it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away this fundamental right of the sovereign of the soil." (p. 410.)

The answer duly pleaded violation of rights secured to the pipe-line company by provisions of the constitution of the United States relating to taking private property without due process of law, equal protection of the laws, and interstate commerce. Whatever burden on interstate commerce adjustment of the pipe-line company's use of the highways to highway uses may occasion, is purely incidental to proper exercise of the state's police power. Transmission lines of all kinds are on the same footing, and are on the same footing with railroads with respect to grade crossings. Separate classification of railroad underpasses and viaducts, permitting exercise of the highway commission's discretion with respect to apportionment of cost, was not unreasonable. The statute does not authorize, and

the orders of the highway commission do not involve, a taking of private property without due process of law. Therefore, none of plaintiff's constitutional rights was invaded.

The peremptory writ of mandamus is allowed.

---

## APPENDIX

"Whenever any person, firm or any corporation created for the purpose of constructing and maintaining magnetic telegraph or telephone lines or for the purpose of constructing and maintaining lines for the transmission of electric current or for the purpose of transporting oil or gas or water by pipe lines, or municipal corporations shall construct or maintain poles, piers, abutments, pipe lines or other fixtures along, upon or across any state highway, such poles, wires, piers, abutments, pipe lines and other fixtures shall be located upon that part of the right of way of said state highway designated by the state highway commission and the state highway commission is authorized and empowered to require the removal of such poles, piers, abutments, wires and pipe lines and other fixtures now upon state highways from the present location on said state highways to such part of the right of way of said state highways as the state highway commission shall designate, and if said person, firm or corporation, upon receiving notice of the requirement of the state highway commission that said poles, piers, abutments, wires, pipe lines or other fixtures be moved as herein provided, fails to comply with such requirement of the state highway commission, the state highway commission may remove such poles, piers, abutments, wires, pipe lines and other fixtures to such place on the right of way of said state highways as may be designated by said state highway commission and the cost of such removal shall be paid to said state highway commission by said person, firm or corporation upon a statement of cost being furnished to said person, firm or corporation. If said person, firm or corporation refuses to pay said charges, the state highway commission shall notify the attorney-general, who shall bring suit against said person, firm or corporation in the name of the state highway commission to recover said amount, such amounts received from such persons, firms or corporations shall be placed in the fund from which the cost of such removal was paid." (Laws 1929, ch. 225, § 16.)