**MAGNOLIA PIPE LINE COMPANY,**
Appellant,

v.

**CITY OF TYLER,** Appellee.

No. 7297.

Court of Civil Appeals of Texas.

Texarkana.

July 11, 1961.

Rehearing Denied Aug. 8, 1961.

Magnolia, as grantee, received two pipe line easements from fee owners in 1931, wherein rights were granted over the Thedford and Nichols lands to construct and operate a pipe line for the transportation of crude oil, which line was promptly and properly constructed at a proper depth. Both easements contain a clause reading in part as follows:

"The said grantor to fully use and enjoy the said premises, except for the purposes hereinbefore granted to said Magnolia Pipe Line Company, who hereby agrees to pay any damages which may arise to crops and fences from the laying, erecting, maintaining and operating for said pipe, telegraph and telephone lines; * * *. It is further agreed that said pipe shall be buried to a sufficient depth so as to not to interfere with cultivation of soil."

In 1931 the lands covered by the easements were in a wooded rural area. Also at that time the pipe line easements did not pass under any land upon which there was a then existing road, highway or street. Pollard later acquired the fee title to said lands subject to said easements. He platted and subdivided the land, or a portion of it, as a residential area in 1956. In 1953 the lands were taken into the corporate limits of the City of Tyler.

The City of Tyler accepted the plat and subdivision made by Pollard, and began to maintain DeCharles, Keaton, and other streets so platted. In 1958 the City decided to pave DeCharles and Keaton Streets with a permanent type of paving and established grades for this purpose. The grade conflicted with the pipe line, and it had to be lowered or the grade for the new streets changed. The City brought suit for declaratory judgment to determine the matters in dispute between the City and Magnolia, the principal matter being as to whether the City or Magnolia should bear the costs of lowering and encasing the pipe line under the pavement.

Ross Madole, Roy Merrill, Dallas, W. F. Weeks (Weeks & Haukerson), Tyler, for appellant.

Troy Smith, Ted Chilcote, Tyler, for appellee.

FANNING, Justice.

The City of Tyler, appellee, brought suit against Magnolia Pipe Line Company, appellant, and Tomas G. Pollard for a declaratory judgment.

In order not to delay the work of completing the paving of said streets and to protect the rights of the parties in their respective claims and without prejudice thereto, a written contract was entered into between the City and Magnolia and the pipe line was lowered and encased at both street crossings by Magnolia.

This contract provided that Magnolia would lower and encase its pipe line at both streets, and in doing so would not be a volunteer as to same, and same would be without prejudice as to any contention that Magnolia desired to make. Provision was further made in said contract, which was made after the City had filed suit as to De-Charles Street, that the City would amend and include the same issues as to Keaton Street. Then the contract provided that the issue would be tried out as to whether it was the City's obligation or Magnolia's obligation to pay the reasonable costs of said work, and on this matter the contract provided in part as follows:

"* * * but if it should be determined that final judgment of the last Court to which the above cause may be taken that it was necessary that Magnolia's line be lowered where Keaton Street crosses the same and that it was not Magnolia's duty and responsibility to lower the same, then the City of Tyler will promptly reimburse and pay to Magnolia the actual, reasonable and necessary costs and expenses of lowering such line at Keaton Street and also the actual, reasonable and necessary costs and expenses of encasing the same if in any such action it is determined that it was and is necessary to encase the pipe line at said place to properly protect it."

The contract makes the same test for liability of the City as to encasing the pipe line at Keaton Street as at DeCharles Street; however the City admitted that it was necessary to lower the line at De-Charles Street.

The City and Magnolia stipulated and agreed that the sum of $3,630.98 was the reasonable costs for lowering and encasing the pipe line at both streets.

Magnolia in the trial court contended among other things that its easement rights were superior to the reserved rights of the grantors, that the acts of the City in uncovering the pipe line on one street and attempting to pave very near to the line on another street, and taking a portion of its pipe line right-of-way, thereby interfering with its enjoyment of its easement privileges by the construction of new street paving, would constitute a taking of Magnolia's property without due process of law, and would violate its constitutional rights under both the Texas and Federal constitutions. It was Magnolia's contention therefore that the City was due to pay to Magnolia the agreed reasonable costs for lowering and encasing the pipe line. Magnolia further denied the claims of the City that it was acting in the proper exercise of its police power.

The City had prayed for declaratory judgment in the trial court on five points as follows:

"(a) Whether it is the duty of Magnolia Pipe Line Company under the above easement contracts, to lower the pipe line at its own expense.

"(b) The determination of the question of necessity of lowering the pipe line where the same crosses Keaton Avenue.

"(c) The determination of the question of necessity of encasing the pipe line at each of the crossings.

"(d) The reasonable and necessary costs and expense of lowering the pipe line at each of the crossings.

"(e) The determination of the reasonable and necessary cost and expense of encasing the original line at each of the crossings involved.

"(f)· That the City of Tyler has exclusive dominion over the public streets in the City of Tyler and under the police power, is entitled to require the relaying and relocating, changing and altering of the utilities and pipe lines such as that laid and maintained by the Magnolia Pipe Line Company at the cost and expense of such utilities and pipe line companies."

The trial court found favorably to the City on points (a) and (f)—favorably to Magnolia on points (b) and (c) with respect to the declaratory judgment. Points (d) and (e) were agreed and stipulated by the parties.

The trial court found in its findings of fact that it was necessary to lower and encase the pipe line at both streets, and further found to the effect that unless Magnolia's pipe line was lowered and encased that same would be the cause of serious danger to the public and held to the effect that Magnolia's use thereof was subject to reasonable regulation by the City, and that it was a valid exercise of the police power by the City to cause Magnolia to lower and encase its high pressure pipe oil line where crossed by the city streets in question, at Magnolia's cost and expense, in order to meet the needs of the public for safe travel and transportation. The trial court rendered judgment against Magnolia on its cross-action to recover from the City the amount of the costs agreed upon as reasonable, and being the sum of $3,630.98. Magnolia has appealed.

A judgment in favor of defendant Pollard removing him from the case has not been appealed from, and he is not involved on this appeal.

Magnolia presents eight points of error upon appeal. Its first seven points relate to whether Magnolia's constitutional rights for the protection of its property were violated by the City of Tyler, and therefore entitled to payment of its reasonable agreed costs in lowering and encasing its pipe lines at the city streets in question, or whether there was no violation of such rights and no right to compensation from the City because of the claimed right of the City that it was acting in the valid and proper exercise of the police power of the City to remove a dangerous condition to the public. By its eighth point appellant contends to the effect that Magnolia's rights and property interests in its two easements were paramount to the rights reserved by the grantors of said easements and their subsequent grantees, and that the trial court's fact finding No. 6 should be set aside.

Art. 1, Sec. 17, of our State Constitution, Vernon's Ann.St., prevents the taking, damaging, or destroying for or applying to public use any property without adequate compensation being made, unless consented to by the owner of such property. Also the Fourteenth Amendment to the United States Constitution prevents the taking of a person's property without due process of law.

■ Magnolia's pipe line easement is property in the constitutional sense. 12 Am.Jur. p. 787, Sec. 157.

An easement is an interest in land for which the owner is entitled to compensation as much so as if the land to which the easement is appurtenant were taken. 29 C. J.S. Eminent Domain § 105, p. 910; McLennan County v. Sinclair Pipe Line Company, Tex.Civ.App., 323 S.W.2d 471, wr. ref., n. r. e.; Panhandle Eastern Pipe Line Co. v. State Highway Comm. of Kansas, 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090; Buckeye Pipe Line Co. v. Keating, 7 Cir., 229 F.2d 795; Forest Lawn Lot Owners Ass'n v. State, Tex.Civ.App., 248 S.W.2d 793; City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243.

■ By damage is meant every loss or diminution of what is a man's own, occasioned by the fault of another, whether this results directly to the thing owned, or be but an interference with the right which the owner has to the legal and proper use of his

own. Gulf, C. & S. F. R. Co. v. Fuller, 63 Tex. 467.

■ Magnolia had a property right in its two easements it had obtained from Nichols and Thedford. The City of Tyler requested and demanded that Magnolia lower and encase its pipe line. Magnolia refused to lower and encase the pipe line at its own cost and expense, and maintained such position until the written agreement was entered into heretofore referred to, wherein it was clearly set forth that the lowering and encasing of such pipe lines under the streets in question would not in any way prejudice Magnolia's right to seek reimbursement for the costs thereof from the City. Thus it is clear that Magnolia was not a "volunteer" in lowering and encasing its pipe line at the streets in question.

In McLennan County v. Sinclair Pipe Line Company, supra, Tex.Civ.App., 323 S. W.2d 471, 474, wr. ref., n. r. e., a somewhat analogous case to the case at bar, Sinclair (who protested and was not a volunteer) was allowed to recover from McLennan County the expense of lowering and encasing its pipe line at points where a *new* road was placed over it by McLennan County. We quote briefly from the Court's opinion in said case as follows:

"Here McLennan County undertook to furnish all the right of way for the construction of Farm to Market Road 1860. This was new construction at the point in issue. Sinclair had an easement for its pipeline which the road had to cross. Such easement is property. McLennan County requested Sinclair to remove the pipeline, Sinclair refused (but later assented when McLennan County agreed that no rights would be lost by Sinclair in doing so). Sinclair's property was to all intents and purposes taken and Sinclair is entitled to compensation therefor. The Archer County case is not contrary to the foregoing but actually supports the result herein reached. Sinclair Pipe Line Co. v. State, Tex.Civ.App., Ft. Worth, 322 S.W.2d 58 is an analogous case and supports our conclusions herein. McLennan County's 1st contention is overruled."

Sinclair Pipe Line Company v. State of Texas, Tex.Civ.App., 322 S.W.2d 58, 60, no writ history, is also a somewhat analogous case to the case at bar, and holds that where the State of Texas acquired highway rights from owners of the fee crossing over and invading easements which such owners had previously granted to Sinclair Pipe Line Company for a private pipe line, that the State invaded the pipe line company's easement by requiring it to change locations of pipes in connection with construction and improvement of roads, and such taking or damaging was not in the valid exercise of the police power, and that the pipe line company was entitled to receive as a minimum the cost of alterations and adjustments made in the pipe lines to accommodate and facilitate the road construction. We quote from the court's opinion in said cause in part as follows:

"Appellee acquired rights of way easements from the owners of the fee, from whom appellant had previously acquired its easements. Appellee acquired no more rights than the owners retained when they conveyed the easements to appellant. These owners could not convey to appellee what they had already conveyed to appellant. 'No citation of authorities is required to support the proposition that the State has no right to invade United's easement or right-of-way or require it to change the location of its pipes in order to build a new road or highway across them in the absence of a valid agreement to do so.' Department of Highways v. United Gas Pipe Line Company, 5 Cir., 258 F.2d 357, 358.

"Arguments in analogous cases that the taking or damaging was in the exercise of the police power were considered and rejected in Petition of

Dreosch, 233 Minn. 274, 47 N.W.2d 106; Panhandle Eastern Pipe Line Co. v. State Highway Commission (Kan.), 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090; Buckeye Pipe Line Company v. Keating, 7 Cir., 229 F.2d 795; Arkansas Louisiana Gas Co. v. Louisiana Department of Highways, La.App., 104 So.2d 204; Rose v. State, 19 Cal.2d 713, 123 P.2d 505; Gray v. Reclamation Dist. No. 1500, 174 Cal. 622, 163 P. 1024; Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322, 28 A.L.R. 1321; Cities Service Gas Co. v. Riverside Drainage Dist., 137 Kan. 410, 20 P.2d 520.

"Nor can we agree with appellee that appellant is not entitled to receive damages because 'there was no evidence before the court as to the value of that portion of appellant's pipe line easement taken and made servient to appellee's easement for highway purposes.' Appellant made alterations and adjustments which the construction and improvement of the roads would render necessary; and it made them before the road work began, 'in order', as appellee admits, 'not to delay the construction of said highways', upon the agreement that the Commissioners' Court would file condemnation proceedings in order to determine the compensation, if any, to which appellant was entitled.

"An easement is taken when the condemnor interferes with its owner's use. Buckeye Pipe Line Company v. Keating, supra. Appellant asks no more than the cost of the alterations to accommodate the road construction.

"In Central Power & Light Co. v. Willacy County, Tex.Civ.App., 14 S.W. 2d 102, where the County condemned a power line easement, it was held that the owner of the easement was entitled to recover the value of the easement for the distance it was taken, the value of improvements not removable, and the expense of removing such of its property as may be salvaged.

"In Cities Service Gas Co. v. Riverside Drainage Dist., 137 Kan. 410, 20 P.2d 520, 523, the court said: 'We conclude that the plaintiff was entitled to recover * * * the reasonable expense of the relocation of the pipe line made necessary by the improvement of the water course on the plans of the drainage district.'

"In Panhandle Eastern Pipe Line Co. v. State Highway Commission (Kan.), supra, it was held that legislation requiring the pipe line company, at its own expense, to make alterations in its line to accommodate proposed highway construction, would result in taking private property without compensation, and was inhibited by the Fourteenth Amendment to the Federal Constitution.

"In Commonwealth v. Means & Russell Iron Co., 299 Ky. 185, 185 S.W.2d 960, 961, the court said: ' * * * it is difficult to conceive a better method of compensating appellee for the minimum damages sustained through the condemnation of its easement than that adopted by the Court in instructing the jury peremptorily to award the undisputed cost of the actual relocation.'

"Article 3265 Vernon's Ann.Civ.St., provides that when property is condemned, the court 'shall assess the actual damages that will accrue to the owner by such condemnation.'

"Having made the alterations in advance of appellee's construction work on appellee's promise to file a condemnation suit in order that appellant's damages might be ascertained, we think appellant is entitled to recover its minimum damage.

"We do not think that the cases cited by appellee, such as Missouri-K-T. R. Co. v. Rockwall County Levee Im-

provement Dist. No. 3, 117 Tex. 34, 297 S.W. 206, and Chicago, B. & Q. R. Co. v. Illinois, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596, which involved railroad facilities over streams, constructed under public franchises, are determinative of the question here presented.

"The judgment is reversed and judgment rendered for appellant."

■ We have carefully reviewed the record in this case, and are of the opinion that the evidence in this case is conclusive that Magnolia's pipe line was never dangerous or hazardous prior to its invasion by the City. Of course when a portion of the lines were uncovered as a result of the City's cutting and grading DeCharles Street and the City proposed to pave De-Charles Street, naturally a hazard was created, which Magnolia promptly called to the attention of the City. Likewise, when the City invaded Magnolia's easement under Keaton Street by cutting and grading near and a short distance above Magnolia's pipe line and the City proposed to pave over such pipe line in such near proximity to the pipe line which the undisputed evidence showed would cause corrosion and a dangerous and hazardous condition, naturally a hazard was created there by the City.

This is not a case where a pipe line was laid under an existing street, highway or road under a franchise, and this case is clearly distinguishable from such type of cases as pointed out in McLennan County v. Sinclair Pipe Line Company, supra, Tex. Civ.App., 323 S.W.2d 471.

■ Here the pipe line easements were private easements acquired by Magnolia about 30 years ago and the pipe line was constructed under rural wooded farm land and did not cross under any existing highway, road or street, and no public utility franchise of any character was involved. While undoubtedly the police power of a city is vast, as outlined by the cases cited by appellee in its excellent brief, it is also ·

clear that such power must be *validly exercised*. Since the pipe line easements were never dangerous to the public until the same were invaded by the City, and the dangerous conditions were proximately caused by the invasion of such easements by the City, we hold that the City under such circumstances could not in the guise of its police power take or damage Magnolia's easements without paying Magnolia adequate compensation therefor under Art. 1, Sec. 17, of our State Constitution, and under the Fourteenth Amendment of the United States Constitution.

Appellant's points are ·sustained. The judgment of the trial court is reversed and judgment is here rendered for Appellant Magnolia for the sum of $3,630.98 against appellee City of Tyler.

Reversed and rendered.