# TWIN CITY SEPARATOR COMPANY and Others v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

July 12, 1912.

Nos. 17,686, 17,687—(83, 84).

**Depression of railway tracks — necessity.**

Under the police power a railroad company may be compelled to depress its tracks where they traverse populous municipalities; and in determining the necessity of such depression the convenience and general welfare of the public is to be considered, as well as its safety.

**Same — who may object.**

Where the proprietors of business plants having side-track connections with the main track of a railroad seek to enjoin the depression of such main track on the ground that their sidings will necessarily be destroyed thereby, but the real purpose of the action is to enjoin any depression at all, and not to compel the depression of the side tracks, as well as the main track, such proprietors are in no position to contend that the railroad company is not acting pursuant to the mandate of a track depression ordinance, on the ground that such ordinance uses the plural, "tracks," instead of the singular, "track," and thus requires the depression of the side tracks as well as the main track.

**Police power over grades of side tracks.**

The right of private enterprises to railroad side-track facilities, whether based upon contract, prescription, or estoppel, as against the railroad company, is subject to a city's police power to order a separation of railroad and street grades, where public necessity so requires.

**Depression of main track — right to side-track facilities.**

Where a city ordinance provides generally for the depression of a certain line of railroad "tracks," without specific mention of side tracks, the proprietors of business plants served by side tracks are not entitled to an injunction restraining the railroad company from depressing its main line, consisting of a single track, on the ground that such depression involves an abandonment of the side tracks without application to and order from the

[1] Reported in 137 N. W. 193.

Railroad and Warehouse Commission; the remedy of such proprietors being by way of direct proceedings to enforce whatever right, if any, they may have to side-track facilities after, or in view of, the depression of the main track.

**Police power not affected by statute.**

R. L. 1905, § 2006, giving certain industries the right to railroad side-track facilities, does not operate to cramp or curtail the police power of the state, or the right, in the exercise of such power, to order track depression.

**Railroad Commission — police power of cities.**

The provisions of the statutes concerning the powers and duties of the Railroad and Warehouse Commission and the general right of industries to railroad side-track facilities were enacted for the purpose of controlling railroads and were not intended to hamper cities in the matter of regulations adopted in the exercise of their police power.

**City ordinance — injunction.**

While courts have power to declare a municipal ordinance invalid, if it is unreasonable, the scope of their inquiry in this regard is limited to the question as to whether or not the municipal council has abused its discretion in the premises; and in the absence of such abuse the courts will not interfere, either directly or indirectly, by enjoining third parties from obeying the mandate of the ordinance.

**Ordinance reasonable.**

In an action by the proprietors of certain business plants to enjoin a railroad company from depressing its main track, on the ground that such depression involved the abandonment of certain side tracks by which the plaintiffs' plants were served, a city ordinance ordering such depression, and under which the defendant claimed to be proceeding, *held*, on the defendant's motion for judgment on the pleadings, not shown to be unreasonable.

**Same.**

It not appearing that the ordinance was unreasonable, the same was not open to attack on the ground of collusion between the railroad company and the city.

Action by twenty plaintiffs in the district court for Hennepin county to restrain defendant, its servants and agents from removing, disconnecting, tearing up or otherwise interfering with, or rendering useless to plaintiffs certain sidetracks, sidings and switches connecting plaintiffs' establishments with the main track upon the right of way of defendant's Hastings & Dakota division, and from excavating

its right of way or depressing its tracks so that it could not maintain and operate all such sidetracks, sidings and switches, and deliver and receive freight and freight cars over the same to and from plaintiffs' premises. The plaintiffs obtained a temporary restraining order, but this was dissolved by the order of Hale, J. The substance of the complaint, of the defendant's answer and of the complaint in intervention of the city of Minneapolis will be found in the opinion. At the trial of the action the motions of defendant and intervener for judgment on the pleadings in their favor were granted, and the injunction asked was denied, Steele, J. From the order dissolving the temporary restraining order and from the judgment in favor of defendants and denying the injunction, entered pursuant to the order of Steele, J., plaintiffs appealed. Affirmed.

*Healy, White & La Du* and *Lancaster, Simpson & Purdy,* for appellants.

*F. W. Root* and *Nelson J. Wilcox,* for respondent Chicago, Milwaukee & St. Paul Railway Company.

*Daniel Fish,* for respondent city of Minneapolis.

PHILIP E. BROWN, J.

This is an action for a permanent injunction to restrain the Chicago, Milwaukee & St. Paul Railway Company, hereinafter called the Railway Company, from abandoning or removing certain side tracks connecting the establishments of the plaintiffs with the main track of the Railway Company's so-called Hastings and Dakota division, where the same runs through the city of Minneapolis, and also to restrain the said company from so excavating its right of way or depressing its tracks thereon that it cannot maintain and operate such side tracks, and for such other relief as to the court may seem just and proper, etc. At the time of the commencement of the action the plaintiffs made application, based on the complaint, files, and affidavits, for an order for a temporary injunction pending the suit, along the same lines as the prayer for relief in the complaint, and a temporary restraining order was issued; but on the hearing of the motion, and on October 21, 1911, the said restraining order was ordered can-

celed and the motion was denied, from which order the plaintiffs appealed.

Thereafter, when the action for a permanent injunction came on for trial, the Railway Company and the city of Minneapolis, which had intervened, joined in a motion for judgment on the pleadings, which consisted of the original complaint and answer thereto and the plaintiff's reply, and the city's complaint in intervention and the plaintiffs' answer thereto. The motion for judgment on the pleadings was granted, and judgment ordered entered accordingly, and from the judgment so entered the plaintiffs appealed.

There are, therefore, two appeals before us; but, since the decision in the main case will necessarily dispose of the appeal from the order denying the temporary injunction, under stipulation of the parties to such effect, made on the oral argument, it is necessary to consider only the former. This being, then, an appeal from a judgment against the plaintiffs, ordered on the pleadings, the plaintiffs' pleadings must control upon all controverted facts, and every reasonable intendment must be indulged in favor thereof. In stating the facts presented by the pleadings, we will, therefore, closely follow the statement in the plaintiffs' brief; such statement being substantially correct under the construction of the pleadings above indicated. They are as follows:

The Railway Company, a Wisconsin corporation authorized to do business in this state, owns, among other lines of railway, a line known as its Hastings and Dakota division, which extends in an easterly and westerly direction from the western limits of the city of Minneapolis to Hiawatha avenue on the east, where it connects with the company's main line. The right of way of this Hastings & Dakota division through the city as aforesaid is approximately one hundred feet wide. Title thereto was acquired in 1880, 1881, and 1882, partly by purchase and partly by condemnation, and during those years the railway line herein involved was constructed thereon, practically upon the natural surface of the ground. This line was and still is a single line of track, with numerous side and spur tracks connecting therewith, constructed when the main line was laid, and thereafter, for the use and accommodation of industries along the right of

way, among which are those of the plaintiffs. At the time of the acquisition of this right of way the same was not within the corporate limits of the city of Minneapolis, and it was not brought therein until 1883.

The plaintiffs, each and all of them are owners of land abutting upon or adjacent to this right of way, and own and operate upon such lands certain mills, warehouses, factories, and grain elevators, all near the regular station of the Railway Company in the said city. They have, moreover, been engaged in business at their present locations for from ten to thirty years, and either they or their grantors have used and employed the side tracks here involved during such time. At various times during the last thirty years, as the same were demanded or required, the Railway Company has constructed numerous side and spur tracks connecting with the main track of its said Hastings and Dakota division, and has maintained and operated the same to deliver and receive freight cars to and from the premises of the plaintiffs. Some of these side tracks are entirely on the respondent company's right of way, and others partly thereon and partly on the lands of the plaintiffs. In some instances the Railway Company paid the entire cost of their construction; in some the plaintiffs shared the cost. During the said period of thirty years it has been the unvaried and uniform custom of the respondent to furnish trackage to all such industries as located along its said right of way. Sometimes side tracks have been provided under written contracts and deeds; sometimes they have been provided to avoid proceedings before the Railroad and Warehouse Commission of the state. The Railway Company has at all times encouraged and invited the location of industries along its right of way, in order to increase its freight business, and the plaintiffs, encouraged by the Railway Company and relying on its uniform custom, its agreements, and its statutory obligation to furnish trackage, purchased their lands and established their several plants, such plants or establishments being on grade with the Railway Company's track and right of way as they now stand, and the buildings of the plaintiffs being built next to the side tracks by which they are served, and so constructed as to facilitate the loading and unloading of freight directly between such buildings and the

Railway Company's cars. The plaintiffs, moreover, have installed machinery and built up large and profitable businesses, having invested, in the aggregate, more than $1,250,000, and they do a gross annual business of more than $5,000,000. They own more than seventy-five buildings and more than one hundred city lots, and use more than 13,000 freight cars annually. To the several kinds of industries thus conducted by the plaintiffs trackage is absolutely necessary, and the plaintiff's lands, buildings, and machinery would, without such trackage, be practically worthless for industrial uses of the kind in which they are now employed, and their value for other purposes would be only about twenty-five per cent of their present value.

Such being the relative situation of the plaintiffs and the Railway Company, the latter formulated a plan for the depression of its tracks and right of way on the said Hastings and Dakota division from Cedar to Hennepin avenue in the said city. It was, and still is, proposed to cut down such right of way eighteen to twenty-four feet through the central forty feet thereof; and to slope the sides of such cut back to the boundaries of the right of way, and then to relay the main track on the new level, and to carry intersecting streets across the same by means of bridges, which depression was, and is, to be two and one-half miles long. In the prosecution of such work the Railway Company intended, and still intends, to remove all side tracks and spur tracks, and, when stopped by the restraining order above mentioned, had proceeded eastward four city blocks, and had torn up and removed the side tracks of the Landers-Morrison-Christianson Company, one of the appellants herein. The Railway Company, furthermore, admits that it intends to tear up and remove all these side tracks, and that it has made no plans for providing them in the future, and does not intend to construct or maintain them, or any others, in the future, along the line where so depressed. It is further alleged in the complaint that, if the contemplated plan is carried out, the Railway Company will have placed its right of way in such a condition that it will be impossible to construct or maintain side tracks along this two-and one-half-mile stretch of its track, and hence that it cannot be compelled so to do. When such depression is completed, the plaintiffs' premises will be eighteen to twenty-four feet above the level of the

company's right of way, and thirty feet to one side thereof. To make side tracks possible, this thirty-foot wide embankment would have to be excavated, and retaining walls built. It is alleged that the Railway Company would object to the cost and difficulty of doing this; that the plaintiffs could not bear the cost thereof, and that, even if they could, it is not certain that the Railway Company would consent thereto; and that, even if this were done, the plaintiffs' plants would have to be depressed, or else elaborate elevating systems would be required, the cost of which would be prohibitive. The abandonment and removal of such side tracks, or the depression of the said right of way in such a way that such sidings could not be maintained in the future, would, therefore, force the plaintiffs to cease doing business at their present locations, and would destroy their businesses, and render their lands, buildings, and machinery practically worthless, and would irreparably injure and damage the plaintiffs.

The above facts are alleged in the complaint. The answer of the Railway Company substantially admits the allegations of the complaint above recited, and alleges that the said company was doing the work pursuant to an ordinance of the city of Minneapolis, a copy of which is set out therein. Such answer, moreover, specifically admits that the Railway Company proposes to excavate its right of way to the depth and in the manner alleged, that it intends to remove and abandon all such side and spur tracks, that it has made no plans for providing them in the future, and that it does not intend to provide them in the future. By amendment the answer relies upon the Railway Company's right to make the said depression of its right of way, without regard to the mandate of the said ordinance, and alleges that the exigencies of the operation of its said line of railway, and due regard for life and limb of persons crossing its said line of railway, necessitate such depression.

The city's complaint in intervention alleges the passage of the ordinance and its acceptance by the Railway Company, the public demand and necessity for the depression required by the ordinance, and that all of the said side tracks can be maintained upon the lower

118 M.—32.

level of the depressed right of way. The plaintiffs' answer to such complaint admits the passage, approval, and publication of the ordinance, and its acceptance by the Railway Company, but denies every other allegation, except as admitted or qualified in the other pleadings in the case.

The plaintiffs' reply to the Railway Company's answer admits the passage, approval, publication, and acceptance of the said ordinance, but denies that such company is or was proceeding with its work in compliance with or conformity to the said ordinance, and alleges, in effect, that the ordinance was adopted through collusion and connivance between and by the Railway Company and the city; that the travel on the intersecting streets is moderate only; that the means adopted in the past to make the crossings safe are still adequate and sufficient, and will be such for some time to come; that there have been no accidents on the said crossings for the past fifteen years; that there is no necessity for the separation of grades at thirty or more of the street crossings, nor will there be any such necessity for years to come; that the ordinance was specifically intended to drive the plaintiffs' industries from their present locations along the respondent railway company's right of way; that the depression will be to the Railway Company's advantage in numerous enumerated ways; that the contemplated depression is unnecessary and unreasonable, and that either partial depression of the tracks or partial elevation thereof, with corresponding elevation or depression of intersecting streets, will fully protect the traveling public, without destroying the plaintiffs' industries; that the Railway Company never applied to the State Railway and Warehouse Commission for leave to abandon these side tracks, and such leave has never been granted; that the ordinance is a mere pretended exercise of the police power; and that it is void, as contravening numerous statutory and constitutional provisions. The reply then denies all other allegations of the Railway Company's answer.

On both of the hearings below the Railway Company and the city advanced, and the plaintiffs attempted to controvert, three main prop-

ositions, upon some one or more of which, it seems fair to infer, as contended by the plaintiffs, the court must have rested its decision. These propositions are: (1) That the plaintiffs have no legal right to or interest in the side tracks involved in this action, or in the continued maintenance thereof; (2) that the city ordinance involved herein was valid, and a complete justification for the proposed abandonment and removal of such side tracks; (3) that in no event did the facts alleged in the pleadings constitute a cause for injunctional relief.

1. The right of the state or a municipality to compel a railroad company to change its roadbed for the safety of the public is so well established in this state, and has been so recently and fully considered by this court, that further discussion of the question would be supererogation. City of Minneapolis v. Minneapolis St. Ry. Co. 115 Minn. 514, 133 N. W. 80; Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169; State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 An. Cas. 1047; 2 Dunnell, Minn. Dig. § 8121. And, furthermore, "the police power of the state is concerned with the convenience and welfare of the public as well as its safety." Chicago, M. & St. P. Ry. Co. v. City of Minneapolis, supra.

What right, then, have the plaintiffs in this action to object to the improvement ordered by the city and being executed by the Railway Company? In other words, what is the status of the plaintiffs in this case? This question should be determined before the other questions involved, viz., the validity of the ordinance and its availibility to the defendant Railway Company, as a defense, are determined.

The status of the plaintiffs, according to their own theory of the case, may be referred variously to statute, contract, prescription, and estoppel; and from these several sources the plaintiffs claim to have acquired vested rights which entitle them to the relief sought. We are here concerned with such rights, however, only in so far as they affect the plaintiffs' status to invoke such relief, and we are satisfied that, from whatsoever source their rights are derived, their only status in this case is to attack the validity of the ordinance under which the Railway Company claims to be proceeding, unless it appears that the

said company is not proceeding thereunder or in conformity thereto, to the plaintiffs' injury. Some contention is made to the latter effect, on the ground that the ordinance requires the company to depress its "tracks," whereas it is in fact proceeding to depress merely its single track. But we do not think there is any merit in this contention. At least as to its main line it appears that the company is acting in accordance with the mandate of the ordinance, and we fail to see how these plaintiffs can stop this concededly pro tanto compliance with the ordinance because there may be other things which, as claimed by the plaintiffs, the Railway Company ought to and is commanded by the ordinance to do, and which really neither concern nor affect the plaintiffs.

It is true that the side tracks, which the plaintiffs claim are included in the word "tracks" as used by the ordinance, will be abandoned if they are not lowered, or at least it seems that such must be the result, and it is so claimed by the plaintiffs; but the plaintiffs' real complaint is, not that the Railway Company is not fully complying with the ordinance as the same is construed by the plaintiffs, but that the Railway Company is complying therewith at all. In other words, the plaintiffs plainly seek to stop this whole improvement, for they strenuously contend that a depression of the whole right of way would be impracticable, if not impossible, so far as concerns utility to the plaintiffs. The plaintiffs are attempting to have the present status of the tracks, both the main track and the sidings, perpetuated, and in aid of such an attempt they certainly cannot object that the ordinance is not being fully complied with; for, according to their own contention, any compliance therewith, whether total or partial, is equally disastrous to the plaintiffs' interests.

It follows that the plaintiffs' only status in this case is to attack the validity of the ordinance; for, whatever their rights to side-track connections may be, they are subject to the police power of the city. Said the court in Swift v. Delaware, 66 N. J. Eq. 34, 47, 57 Atl. 456, 462:

"In view of the subsequent contract made by the company with the city * * * for the removal of its tracks, is the agreement with the complainants, if proved, one which a court of equity should spe-

cifically enforce? In my judgment it should not, and for the reason that the track elevation contract was one made for the purpose of carrying out obligations imposed upon the company in the interest of public safety, which are paramount to the private interests of the complainants, and the performance of these public obligations should not be interfered with or prevented by the specific enforcement of complainants' supposed private rights. * * * As to the validity of any contract made by a railroad company for such a private use of or interest in its lands used for its railway or any of its appurtenances, as would prevent its performance of these public obligations, to arrange for the public safety by the removal of grade crossings in cities, my view would be either that the contracts are altogether void, or that they must be considered as made and taken subject to any contract subsequently made to remove its grade crossings. Contracts of this character, for the permanent location or use of their road or works, have been held to be subject to termination when even the interest of the road itself requires it."

This, we think, is the true doctrine that must control the instant case, and the rule as above announced disposes of the plaintiffs' contentions as to their vested rights so far as the same are predicated upon contract, prescription, or estoppel. As further said [p. 49] by the court in the case above cited:

"The agreement set up by complainants in this case, that they are entitled to have the switch and siding retained in their present location and with their present connection with the main tracks for use in their business, if specifically enforced, would retain permanently (or at the will of the complainants) the grade crossings at both Broad and Plane streets, and prevent both the city and the Railroad Company from removing them under any laws now in force. I cannot consider that any such operation or effect should be given to any contract made by the Railroad Company for the private use of their tracks. If it can and should be given, then any railroad company by its contracts will be able to give to private individuals, for their own uses, the control of track elevations and the abolition of grade crossings in the cities."

The plaintiffs invoke the legislative policy of this state with refer-

ence to the securing of the right to side tracks to certain industries, to which, as a class, the plaintiffs belong. R. L. 1905, § 2006, they claim, gives such industries an absolute right to trackage, upon compliance with certain prerequisites. Laws 1907, p. 352, c. 261 [R. L. Supp. 1909, §§ 2038–2040], they further argue, confers upon the Railroad and Warehouse Commission exclusive jurisdiction in the matter of abandonment of railway tracks of any kind whatsoever. Hence, their argument proceeds, the Railway Company had no right to depress its main track here in controversy, when such depression would necessarily involve an abandonment of the side tracks, without an application to the Railroad and Warehouse Commission. "The ordinance," say the plaintiffs, "does not expressly direct the abandonment and removal of such side tracks, and these appellants were entitled to assume that before they were abandoned there would be such an application and that they might then contest the same." The reply to this contention is obvious from the plaintiffs' own contention upon another point. If, as the plaintiffs argue, it will be impracticable to depress the plane of these sidings, then the depression of the main track necessarily involves an abandonment of the sidings, and we are again brought up against the ordinance.

It is not necessary to inquire why the ordinance did not make specific provision with regard to these sidings. Perhaps it was thought best to allow that matter to be worked out as an engineering problem during the progress of the main project. Perhaps the city did not contemplate the necessity of an abandonment of the sidings. Perhaps it was intended to leave this matter for settlement and adjustment when it should appear to what extent the system of sidings would be affected. As we have said, it does not appear what the city council had in mind with regard to this matter. Nor do we think that such an inquiry is here material. If, upon the completion of the depression of the main track, side tracks are practicable, the Railway Company's expressed intention not to provide them will prove futile, for the plaintiffs will undoubtedly be able to enforce their statutory rights in this regard. If they are not practicable, then the plaintiffs will have suffered damnum absque injuria from the exercise of the police power. Conceding, as must be done, that the city had

the power, acting for the general welfare, to order these tracks depressed, it must be held, without regard to collateral consequences, that, since the greater includes the less, if the main track can legally be lowered, the fact that side tracks are connected therewith and must necessarily be discontinued cannot militate against the legal right of the city to order the alleged improvement or absolve the Railway Company from the duty of complying therewith. If one person has the legal right to fell a tree, can another object because the branches fall with it?

It is vain for the plaintiffs to invoke the sacredness of vested rights and the inviolability of property. The police power is paramount. If it be for the public good that this railroad shall be depressed, the state, and also the municipality, has the right so to require, even though the plaintiffs' businesses be totally annihilated thereby, and this without compensation for the damage done.

Any contention that R. L. 1905, § 2006, operates to cramp or restrict the police power of the state requires no consideration. The point is untenable. See State v. Chicago, M. & St. P. Ry. Co. 115 Minn. 51, 131 N. W. 859. Nor can we sustain the plaintiffs' contention that our laws and statutes referred to concerning the powers and duties of the Railroad and Warehouse Commission, and the general rights conferred by statute to railroad facilities, prevent the lowering of the defendant company's track. The laws referred to were enacted for the purpose of controlling railroads, and were not intended to hamper cities in the matter of regulations prescribed and adopted in the exercise of the police power.

The only question, therefore, left for our determination, is whether the ordinance requiring this track depression is valid. In other words, the status of the complainants in this case is to ask that question and none other.

2. Is the ordinance valid? The power of the city to exercise the state's police power in the premises is unquestioned and unquestionable. See State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 An. Cas. 1047. Likewise it is conceded that the ordinance was enacted with all due formality. Such being the case, there is left, aside from the plain-

tiffs' claim of collusion, to which we will refer later, only one ground of attack upon the ordinance, viz., that it is unreasonable. The authorities on this question are very numerous, and the law is so well settled that there is no necessity for extended discussion. We have, moreover, been referred to a case which, in our opinion, disposes of the questions here involved completely and concisely. In Murphy v. Chicago, 247 Ill. 614, 93 N. E. 381, the complainant sought to enjoin the defendant from elevating its tracks as required by a city ordinance.

"The power of the council to pass such an ordinance," said the court, "is not an open question, nor is the source of its authority doubtful. It is from the police power that the council gets its right. Having the power, the council is limited in its exercise only by the requirement that the ordinance shall be reasonable. Where power is given to the city council to legislate on any subject, though the details of legislation may be left to the discretion of the council, such discretion must be reasonably exercised. If an ordinance passed by the council is unreasonable, it will be declared invalid, and whether or not it is unreasonable is a question for the court."

But, while unquestionably we have the power to declare the ordinance here involved to be invalid, if it is unreasonable, the scope of our inquiry is limited to the question as to whether or not the council has abused its discretion in the premises, and in the absence of such abuse the courts will not interfere, either directly or indirectly, by enjoining the Railway Company from doing that which the council has commanded it to do. In the case last cited it was alleged in the bill that the vacation of a street in connection with the elevation of railroad tracks was unnecessary and an abuse of power:

"This," said the court, "is only the statement of the pleaders' conclusion. The facts stated show that inconvenience will result to the appellants and their tenants, that probably their business will be much diminished and their property will greatly depreciate in value. These circumstances alone do not even tend to show that the ordinance is unreasonable. Such consequences not infrequently result to some property from the elevation of railroad tracks, the building of viaducts, and the making of other public improvements; but the improve-

ments are not to be suspended on that account at the instance of the owner of the property affected. If damages result of such a character that he is entitled to compensation, he may recover such damages; but he cannot call upon a court of equity to stop the improvement. It is not essential to the validity of the ordinance that the plan of elevating the tracks, making subways, and securing, protecting, and preserving the public safety, is the best that could have been devised. It is sufficient if it is not unreasonable, though some other plan might be thought to be a better one."

So, in the instant case, we think that the plaintiffs' charges of unreasonableness are mere conclusions. Indeed, we think that the plan adopted by the city is unassailable on any of the grounds alleged, remembering always that the reasonableness of such plan must be viewed, not from the narrow viewpoint of those who will suffer incidental injury, but from the larger viewpoint of the convenience and safety of the general public and the general welfare of the community. "Courts have no power to declare an ordinance void for the reason urged"—that is, for unreasonableness—said Chief Justice Start, in State v. Barge, 82 Minn. 256, 259, 84 N. W. 911, 912, 53 L.R.A. 428, "unless its unreasonableness is so clear, manifest, and undoubted as to amount to a mere arbitrary exercise of the power vested in the legislative body." See, also, Knobloch v. Chicago, M. & St. P. Ry. Co. 31 Minn. 402, 18 N. W. 106; State v. Zimmerman, 86 Minn. 353, 90 N. W. 783, 58 L.R.A. 78, 91 Am. St. 351. And it must be remembered in the instant case that the Railway Company is making no objection to the lowering of its main track, and also that the presumption in a proceeding of the kind now before us is in favor of the ordinance, and that the courts cannot be oblivious to a matter so generally recognized as the frequent and urgent necessity of separation of railroad and street grades in populous communities.

3. It was contended by the plaintiffs that there was collusion between the Railway Company and the city. The record, however, fails to sustain this contention. Such, moreover, is not a matter upon which an attack upon the ordinance can be based in a proceeding of this kind, where the ordinance does not appear to be unreasonable. Murphy v. Chicago, supra.

Order and judgment affirmed.