[1] Reported in 295 N.W. 47.
The town board of Pleasant Mound in Blue Earth county having established town ditch No. 1 (proceeding under 2 Mason Minn. St. 1927, § 6841, et seq.), Busse, Hayward, *Page 567 
Wojahn, and Parker, respondents here, appealed to the district court, where their respective claims for damages were tried to a jury. A verdict was directed against all of them except Busse. On his claim, for the special and limited damage hereinafter mentioned, the jury awarded him $100. Thereafter the landowners made separate motions for new trial. All were granted exclusively upon the ground of error in directing a verdict against Hayward, Wojahn, and Parker and by instruction limiting Busse's damages to those arising from the location on his land of an outlet and appurtenant catch basin. From the order granting the new trial, Larson, whose land was the only beneficiary of the drainage, and the township appeal.
Larson owns the southeast quarter and Busse the southwest quarter of section 36. The Hayward, Wojahn, and Parker lands lie to the north. Beginning some miles to the south and running northward through Busse's east 80, over the Hayward, Wojahn, and Parker lands, is a shallow but well defined watercourse. On Larson's land is what counsel call a "pothole" or slough with an area of some ten or more acres. What little but inadequate natural drainage it has is southward. Along the Larson-Busse boundary is a well defined ridge. So far as we can gather, it is partly on Larson's but mostly on Busse's land. The proposed ditch begins in the Larson slough and runs due west 700 feet, 285 of which are on the Busse property. The drain is of ten-inch tile, 17 feet underground at the highest point of the ridge on the Busse land.
At the outlet there is to be a small, shallow, concrete catch basin, calculated, we suppose, to prevent erosion. For the location and maintenance of this catch basin on his land, the jury awarded Busse $100 as damages, under instruction that he could recover on no other ground, that he was "not entitled to recover any damages for the water that is drained onto him by reason of the construction of this ditch." *Page 568 
Direction of the verdicts against three of the landowners and the indicated limitation of Busse's damages were put upon the familiar rule of Sheehan v. Flynn, 59 Minn. 436, 61 N.W. 462,26 L.R.A. 632. It is that a landowner may dispose of surface water as best he can so long as he uses his own land so as not unnecessarily or unreasonably to injure his neighbor's. He is entitled so to get rid of it even though it is thereby conveyed upon the land of another if the latter is not thereby unreasonably injured.
That rule relates exclusively to private rights and activities. It imposes upon the lands of a lower owner a quasi servitude for the private purposes of the upper owner. It has no application to public drainage proceedings, which are justified only to serve public rather than private purposes. There must be showing, 2 Mason Minn. St. 1927, § 6842, of public benefit such as that to highways or the public health.
The question is not before us, so we are assuming that the ditch will be of public benefit. Otherwise this proceeding would not have been authorized under the statute. Had the latter not made public benefit a condition of such proceedings, it would have been unconstitutional under the rule of State ex rel. Schubert v. Board of Supervisors, 102 Minn. 442,114 N.W. 244, 120 A.S.R. 640.
This being a public proceeding, no land can be taken or damaged, without offsetting benefit, unless compensation is first made or assured. The town is exercising the governmental right of eminent domain. So the adversely affected landowners are entitled to compensation for all damages.
The rule of Sheehan v. Flynn, 59 Minn. 436, 61 N.W. 462 (see also Rieck v. Schamanski, 117 Minn. 25, 134 N.W. 228), would have protected Larson in reasonable drainage undertaken privately by him on his own land. But when, instead of a private enterprise, we have a public one (compare State ex rel. Wickstrom v. Board of Co. Commrs. 98 Minn. 89, 94,107 N.W. 730), prosecuted for the public *Page 569 
benefit and with aid of the power of eminent domain, the private rule of Sheehan v. Flynn, supra, ceases to operate and the public one (of the statute, 2 Mason Minn. St. 1927, §§ 6846, 6849, requiring compensation for all property taken or damaged), takes hold of the situation in controlling fashion.
Cited in opposition to our conclusion is Board of Drainage Commrs. v. Board of Drainage Commrs. 130 Miss. 764, 95 So. 75,79, 28 A.L.R. 1250. The contest there was not between individuals, or between individuals and governmental subdivisions, but between two groups of drainage districts. All of them, we assume, were public corporations exercising governmental powers, including that of eminent domain. Notwithstanding, the discussion of the relative rights of upper and lower riparian owners was in terms of private rather than public rights. The decision was that the upper drainage districts could burden a natural watercourse even beyond its capacity with no resulting legal damage to the lower districts, whose actual substantial damage was conceded. The rule was adopted as the better one [130 Miss. 797] "in view of the peculiar local conditions [of the Mississippi delta] and topography." Any other and contrary rule, it was considered [130 Miss. 795], "would, in effect, destroy the legislative policy as manifested in" the "drainage district laws" of Mississippi. It was frankly recognized that the decision ran counter to much authority. The distinction between cases involving opposition of public rights to each other, and those in similar conflict between private, or between private and public rights, could not have been overlooked because it was made in the concurring opinion of Mr. Justice Ethridge, whose protesting concurrence was based exclusively upon earlier decisions in which he had dissented. His final submission was that [130 Miss. 802] "the drainage laws ought to be so shaped that injury would be cared for, but this is a matter which the court cannot properly take care of." *Page 570 
So we think that case is plainly distinguishable in that our statutes declare that when drainage is undertaken by public authority rather than in the exercise of private right all damage to landowners must be compensated.
The argument is strongly urged that, as to damage resulting from flowage of lower lands, this is a case of damage without legal injury, and so without right to compensation. That would be true if Larson owned the Busse quarter along with his own, for then he would be in the exercise of lawful right[2] in doing just what the town is doing by way of drainage. Also, it may be postulated, that if the town were exercising the police power of government, without more, the case would be one of damnumabsque injuria, or uncompensated duty of submission. Gray v. Reclamation Dist. 174 Cal. 622, 163 P. 1024. The complete answer is that, the constitution aside, the statute governing this proceeding, 2 Mason Minn. St. 1927, §§ 6846, 6849, requires compensation to all who suffer damage. Hence it is of no consequence that there may be an element of police power activity in the proceeding. Also invoked are the powers of taxation and eminent domain. Curran v. County of Sibley,47 Minn. 313, 50 N.W. 237; State ex rel. Utick v. Board of Co. Commrs. 87 Minn. 325, 335, 92 N.W. 216, 60 L.R.A. 161; 2 Dunnell, Minn. Dig. (2 ed.) § 2819.
The opposing argument is that if the power of eminent domain is used to effectuate a purpose of police power there *Page 571 
is ordinarily no right to compensation. Whether and under what circumstances damage from an exercise of the police power alone is compensable is a problem we do not consider or decide. Highways are established and maintained by the police power. 25 Am. Jur., Highways, § 19; State ex rel. City of Minneapolis v. St. P. M. M. Ry. Co. 98 Minn. 380, 387, 108 N.W. 261,28 L.R.A. (N.S.) 298, 120 A.S.R. 581, 8 Ann. Cas. 1047. Yet, abutting owners, whose property is damaged, as by change of grade, but not taken, are now entitled to compensation. They were not before the amendment of constitutions and statutes to require compensation for damage as well as taking. Dickerman v. City of Duluth, 88 Minn. 288, 92 N.W. 1119; Sallden v. City of Little Falls, 102 Minn. 358, 113 N.W. 884,13 L.R.A. (N.S.) 790, 120 A.S.R. 635.
The statute under which the town is proceeding requires compensation. That should be enough. But we examine the proposition somewhat further. As Mr. Rottschaefer states (Rottschaefer, Constitutional Law, p. 694), private property may be taken under the regulatory and taxing powers as well as that of eminent domain. The taking is referable to the police power if it is "a mere incident to a valid regulation to promote the public interest; to the taxing power, if for the primary purpose of raising revenue * * *; and to the power of eminent domain if it is taken primarily for the purpose of permitting the government * * * either to inflict an injury upon the very property taken for a public use, or to utilize it for a public use other than the * * * governmental expenses." That our statutory drainage proceedings invoke the power of eminent domain is plain. That is why the statutes in such mandatory fashion require compensation for all damage done.
A landowner has the right to make reasonable disposition of surface waters. The state, in taking or damaging property by drainage proceedings, does not have the rights *Page 572 
of a landowner because it has no estate. It proceeds, not as an owner of property, but in the exercise of sovereign right. That right is conditioned upon compensation.
Whether respondents have been or will be damaged, and to what extent, are questions not now presented. Their damage, if any, will result from the exercise of power of eminent domain. So it is immaterial that, from the standpoint of public health, the police power justifies the drainage. The property is taken or damaged, not by the police power, but by that of eminent domain. Hence the right to compensation is absolute.
It is not always true that "in the matter of the drainage and disposition of surface waters, a town has the same rights and is subject to the same liabilities as an individual." As used in Oftelie v. Town of Hammond, 78 Minn. 275, 277,80 N.W. 1123, 1124, and Sandmeier v. Town of St. James, 165 Minn. 34,36, 205 N.W. 634, the statement is true because in each case it was made in relation to a town's reasonable effort to drain its own highway in respect to which it has the rights of an owner. 3 Dunnell, Minn. Dig. (2 ed. 1934 Supp.) § 4155. The power of eminent domain with the attending duty of compensation for all damage was not involved.
It seems to us also that inadvertent misapplication of McCarthy v. City of Minneapolis, 203 Minn. 427, 430,281 N.W. 759, 761, is being attempted. There again there was no exercise of the power of eminent domain. The action was in tort. Damages were claimed for separation of street traffic resulting from the erection of a bridge which was part of the street. "From that change alone plaintiffs suffered no damage."
If an individual reasonably drains surface water from his own premises, there is no injury to his damaged neighbor. He is within his own, and so does not invade the right of his neighbor. *Page 573 
The amendment of constitutions to require compensation for property damaged and the similar declarations of statutes have a purpose which judges may not thwart by restrictive construction. There is abundance of authority that they should be liberally construed to effect their remedial purpose. 2 Dunnell, Minn. Dig. (2 ed. Supps.) § 3047. The precise argument here made was rejected by the appellate and supreme courts of Illinois in Lake Erie Western R. Co. v. Scott,132 Ill. 429, 436, 24 N.E. 78, 80, 8 L.R.A. 330, 332. Its conclusion is thus stated:
"It follows, therefore, that appellant's proposition that 'a corporation is not liable unless an individual doing the same thing on his private property would be,' as applied to this case, is not sound. An individual cannot legally take or damage private property for public use, but a railroad company can lawfully do either, if in so doing it makes compensation."
Because here the damage, if any, results from an exercise of the power of eminent domain, and, in consequence, the statute, to say nothing of the constitution, requires compensation, the order granting the new trial was right.
Order affirmed.
[2] No point is made that the water of which Larson wants to rid his premises is not surface water as defined in Schaefer v. Marthaler, 34 Minn. 487, 26 N.W. 726, 57 Am. R. 73. The doctrine of that and other cases, that surface water is a "common enemy" may be somewhat out of date. Long decreased precipitation over large areas may have converted it, or much of it, into a common friend because of its sorely needed contribution to the subterranean water supply, and the consequent elevation of the water table to, and its maintenance at, a plane sufficiently high to support vegetation.