IN RE PETITION OF ANDY DREOSCH AND OTHERS FOR
ESTABLISHMENT OF COUNTY DITCH NO. 78.
NORTHERN NATURAL GAS COMPANY v. COUNTY OF
BLUE EARTH.[1]

February 23, 1951.

No. 35,204.

[1]Reported in 47 N. W. (2d) 106.

*Wilson, Blethen & Ogle, Lawrence I. Shaw,* and *F. Vinson Roach,* for appellant.

*Smith, McLean & Peterson* and *Carl W. Peterson,* County Attorney, for respondent.

CHRISTIANSON, JUSTICE.

Appeal from an order of the district court dismissing the appeal to that court by Northern Natural Gas Company from an order of the board of county commissioners approving and confirming the viewers' report awarding no damages to said appellant in connection with the establishment of county ditch No. 78, Blue Earth county.

Appellant is a private corporation, incorporated under the laws of the state of Delaware and authorized to do business in this state by virtue of a certificate of authority duly issued by the secretary of state. It owns, operates, and maintains a natural gas pipe-line system through which it transmits its own natural gas purchased or produced at fields in Texas and Kansas to points in several states, including Minnesota. It operates under a certificate of public convenience and necessity issued by the Federal Power Commission.[2] Almost all of its gas is sold at wholesale to public utility distributing companies for resale. Except for permits obtained in the case of highway and railroad undercrossings, all of appellant's pipe lines are constructed across privately owned property, and in a few instances state-owned property, under authority of private right-of-way easements for natural gas transmission lines, obtained by grant for valuable considerations from the record owners of such property.

County ditch No. 78 was established by order of the county board for Blue Earth county on August 17, 1948. It is antici-

_____
[2]Natural Gas Act, June 21, 1938, 52 Stat. 821, c. 556, 15 USCA, § 717, *et seq.*

pated that it will furnish drainage for approximately 10,000 acres of agricultural land. In general, the ditch follows a natural swale through the area to be drained. Since 1939, appellant has maintained a 16-inch, all-steel, welded, high-pressure, natural gas transmission pipe line through the watershed area which county ditch No. 78 is intended to drain.[3] This line is the main artery of appellant's system for transporting natural gas through south central Minnesota to Minneapolis and St. Paul, and serves as a source of supply for many communities en route. The proposed ditch will cross appellant's pipe line at three points. At each of these points, the pipe line was laid through privately owned lands by virtue of easements appellant secured from the owners by private grant. At two of the places where the pipe line intersects the proposed county ditch, there was, at the time appellant obtained its easements, a public ditch which had been established and constructed by the county many years prior thereto. At one point it consisted of a 16-inch drain tile, and at the other point there was a three-foot open ditch. At the third intersection, there was a privately owned open ditch and tile drain. Appellant's pipe line in no way interfered with the existing drainage ditch and tile systems at the points of intersection. It was laid three feet below the bottom of the three-foot open ditch and is four and five feet below the ground level at the two other locations.

County ditch No. 78 will be an open ditch considerably deeper than appellant's pipe line at the three points of intersection. It will be an enlargement and deepening of a natural watercourse for surface waters and will replace the existing drainage facilities at these three locations. The construction of the ditch will make it necessary for appellant to alter or reconstruct its pipe line by either raising or lowering the pipe at each of said crossings. This will require a substantial expenditure by appellant.

---

[3]Pursuant to a certificate of public convenience and necessity issued by the Federal Power Commission to appellant under the provisions of the grandfather clause of the Natural Gas Act, 15 USCA, § 717f(c).

The viewers' report awarded no damages to appellant. Appellant appealed to the district court from the county board's order approving and confirming the viewers' report. Respondent (the county of Blue Earth) moved to dismiss the appeal upon the ground that it was appellant's uncompensated duty to reconstruct its pipe line to accommodate itself to the ditch. The district court granted respondent's motion. Appellant appeals from the order dismissing its appeal, contending that it is entitled to damages.

It is conceded that construction of the proposed ditch will provide more efficient drainage for the 10,000-acre watershed to be served thereby; that it is the only practical means of draining the area in question; and that it will be a public benefit and utility which will promote the public health and welfare. Appellant concedes that it is subject to the proper exercise of the police power of this state[4]; but points out that it is not operating under authority of any special franchise granted by the state or local authorities and that under M. S. A. 303.09 it has the same rights and privileges in this state as a domestic corporation organized for the same purposes. By virtue of appellant's articles of incorporation and by act of congress (15 USCA, § 717 f[h]), it has the power of eminent domain.

The motion to dismiss the appeal was heard in the district court upon stipulated facts and certain oral testimony offered by respondent. It appears from the trial court's memorandum attached to its order dismissing appellant's appeal that it found that the construction of county ditch No. 78 constituted an enlargement and deepening of a natural watercourse and the present drainage facilities at the three locations in question; that appellant's easements were subject to the natural right of drainage; and that appellant was charged with notice that the natural watercourse and drainage facilities in existence when it obtained its easements and installed its pipe line might be improved and enlarged in the future. It concluded, therefore, that it was ap-

[4]State v. Creamery Package Mfg. Co. 110 Minn. 415, 126 N. W. 126, 623.

pellant's uncompensated duty to reconstruct its pipe line, and accordingly dismissed appellant's appeal.

Appellant contends that the evidence shows only that there was a prairie swale or depression at these locations before the present drainage facilities were installed. The testimony on this point is not too clear. The most that can be claimed from the evidence in this regard is that previously there was a well-defined natural watercourse for the drainage of surface water at these three locations. For purposes of this appeal, we will assume such to have been the fact. Respondent does not claim that there ever was a creek or river bed at the locations in question.

On appeal, appellant contends that it is entitled to damages because respondent in establishing the ditch was exercising its power of eminent domain, and that appellant's property has been taken or damaged for a public use within the provisions of the state and federal constitutions and the drainage laws of this state.

Respondent, on the other hand, contends that the maxim *damnum absque injuria* is applicable because the establishment of a drainage system is the exercise of the police power functioning through the power of eminent domain, and that at the time appellant obtained its easements there was a natural right to drain the upper lands across the land covered by its easements, which right was part and parcel of said upper lands and one that appellant's grantors could not and did not convey.

■ In view of this court's decision in In re Town Ditch No. 1, 208 Minn. 566, 295 N. W. 47, there should be no question that respondent in establishing county ditch No. 78 was exercising its delegated power of eminent domain. This court there stated (208 Minn. 571, 295 N. W. 49):

"* * * That our statutory drainage proceedings invoke the power of eminent domain is plain. That is why the statutes in

such mandatory fashion require compensation for all damage done.

* * * * *

"* * * Their damage, if any, will result from the exercise of power of eminent domain. So it is immaterial that, from the standpoint of public health, the police power justifies the drainage. *The property is taken or damaged, not by the police power, but by that of eminent domain.* Hence the right to compensation is absolute." (Italics supplied.)

See, also, Lien v. Bd. of Co. Commrs. 80 Minn. 58, 62, 82 N. W. 1094, 1095.

■ M. S. A. 106.151 (L. 1947, c. 143, § 15), which was in effect at the time county ditch No. 78 was established,[5] provides in part as follows:

"The viewers, with or without the engineer, shall view *all* lands and *properties* benefited or *damaged by the proposed drainage system* and shall make their report thereon. [Italics supplied.]

* * * * *

"The viewers shall report all benefits and damages that will result to all railways and other utilities, including lands and property used for railway or other utility purposes.

"* * * to the state of Minnesota and all counties and other municipal corporations resulting from the proposed drainage system. When any public road or street shall be found to be benefited or damaged, the state or the county, or other corporation, which is by law charged with the duty of keeping such road or street in repair, shall be assessed or allowed the amount of benefits or damages accruing to such road or street; except that benefits and damages assessed and allowed for bridges or culverts

---

[5]The prior statute, § 106.17, subd. 2, provided:
"The viewers shall report * * * the damages awarded to each municipal or other corporation, and to each person, or association of persons, telephone or telegraph line or other personal property, and from the necessary construction and maintenance of any bridges, culverts, or other works rendered necessary by the establishment of such drainage improvement, * * *."

shall be assessed and allowed to the state, county or other municipal corporation which is by law charged with the duty of constructing and maintaining such bridge or culvert as required by section 106.271."

Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."[6]

Although appellant does not own the fee title to the real estate here involved, it does own an easement in the land in each instance. An easement is *property,* and when taken for public use the owner ordinarily is entitled to compensation. Adams v. C. B. & N. R. Co. 39 Minn. 286, 290, 39 N. W. 629, 631, 1 L. R. A. 493; In re Appeal of Sowers, 175 Minn. 168, 170, 220 N. W. 419, 420; Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394; United States v. Welch, 217 U. S. 333, 339, 30 S. Ct. 527, 54 L. ed. 787, 789; Panhandle Eastern Pipe Line Co. v. State Highway Comm. 294 U. S. 613, 618, 55 S. Ct. 563, 565, 79 L. ed. 1090, 1095.

Section 117.02, subd. 2, defines "taking" as applied to property within the meaning of the general eminent domain statutes of this state as follows:

"The word 'taking' and all words and phrases of like import include every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or value of private property."

Subd. 3 thereof defines the word "owner" as "all persons interested in such property as proprietors, tenants, encumbrancers, or

[6]U. S. Const. Amend. V, provides:

"No person shall * * * be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation."

Amend. XIV provides in part:

"* * * nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdition the equal protection of the laws."

otherwise." See, Seabloom v. Krier, 219 Minn. 362, 365, 18 N. W. (2d) 88, 90. Although the taking of property under our drainage laws is excepted from the provisions of the general eminent domain statutes by § 117.01, the meaning of the word "taking" has been construed to mean the same as the quoted statutory definition under the constitution of this and other states.

"Under the modern construction of the term, a 'taking' of property for which compensation must be paid does not require an actual physical taking, but may consist of an interference with the rights of ownership, use, and enjoyment of property." 29 C. J. S., Eminent Domain, § 110.

See, also, 18 Am. Jur., Eminent Domain, §§ 156, 157.

Thus, in the early case of Adams v. C. B. & N. R. Co. *supra*, this court recognized that the "taking" contemplated by our constitution is not confined to the act of physically depriving an owner of possession of his property. That case involved the construction of a railroad along a public street on the side opposite plaintiff's lot. In addition to his ownership of the fee to the middle of the street, plaintiff owned an easement in the portion of the street where the railroad was to be built. It was there conceded that the railroad company would not actually succeed to plaintiff's easement in the sense of physically taking possession of it. However, in holding that plaintiff could recover damages, this court stated (39 Minn. 290, 39 N. W. 631):

"* * * But it may destroy or materially impair it by rendering it impossible for the owner of it to enjoy it to the full extent that he is entitled to. Such destruction or impairment is within the meaning of the word 'taken,' as used in the constitution, as fully as is the depriving the owner of the possession and use of his corporeal property."

Not only the taking but the damaging of private property must be compensated under Minn. Const. art. 1, § 13. In re Application of Hull, etc., 163 Minn. 439, 204 N. W. 534, 205 N. W. 613,

49 A. L. R. 320.[7] Liability for *damages* to private property is put on the same basis as the *taking* of private property under Minn. Const. art. 1, § 13.

In Panhandle Eastern Pipe Line Co. v. State Highway Comm. *supra,* the United States Supreme Court stated (294 U. S. 618, 55 S. Ct. 565, 79 L. ed. 1095):

"'* * * A private right of way is an easement and is land.* United States v. Welch, 217 U. S. 333, 339, 30 S. Ct. 527, 54 L. ed. 787, 789. No compensation was provided for; none was intended to be made. Ordinarily, at least, such taking is inhibited by the 14th Amendment. Chicago, B. & Q. Ry. Co. v. Chicago, 166 U. S. 226, 241, 17 S. Ct. 581, 586, 41 L. ed. 979, 986; Chicago, B. & Q. Ry. v. Drainage Comm'rs, 200 U. S. 561, 593, 26 S. Ct. 341, 350, 50 L. ed. 596, 609; McCoy v. Union Elevated R. Co., 247 U. S. 354, 363, 38 S. Ct. 504, 507, 62 L. ed. 1156, 1165; Chicago, B. & Q. Ry. Co. v. Public Utilities Comm'n, 69 Colo. 275, 279; 193 Pac. 726, 728. See Lewis, Eminent Domain, (3d ed.) § 223.

"*A claim that action is being taken under the police power of the State cannot justify disregard of constitutional inhibitions.* Schlesinger v. Wisconsin, 270 U. S. 230, 240, 46 .S. Ct. 260, 261, 70 L. ed. 557, 564; Georgia Power Co. v. Decatur, 281 U. S. 505, 508, 50 S. Ct. 369, 370, 74 L. ed. 999, 1003; Southern Ry. Co. v.

---

[7]The syllabus to the court's opinion in In re Application of Hull, etc., *supra,* defines the meaning of the word "damaged" as used in Minn. Const. art. 1, § 13, as follows:

"The word 'damaged,' used in section 13, art. 1, of the state Constitution, * * * refers to damage which could have been recovered at common law had the acts which caused the damage been done without constitutional or statutory authority. Under the Constitution and statute, to entitle a land-owner to damages, he must show that he has suffered an injury different in kind from that suffered by the general public." See, also, Stuhl v. G. N. Ry. Co. 136 Minn. 158, 161 N. W. 501, L. R. A. 1917D, 317; McCarthy v. City of Minneapolis, 203 Minn. 427, 281 N. W. 759.

Virginia, *supra*, p. 196 [290 U. S. 190, 54 S. Ct. 148, 150, 78 L. ed. 260, 265]." (Italics supplied.)

Clearly, here there has been a taking or damaging of appellant's private property for a public use within the terms of our drainage laws, as well as the provisions of the state and federal constitutions. Therefore, the only question that remains for consideration is whether appellant was entitled to be awarded damages for the cost of reconstructing its pipe line to accommodate the new drainage ditch.

■ Respondent contends that the doctrine of *damnum absque injuria* (damage without legal injury) is applicable here, and that it is the uncompensated duty of appellant to reconstruct its pipe line at said crossings so as not to interfere with the construction of county ditch No. 78 and with the flow of surface waters therein.

In support of its contention respondent cites the following cases: C. M. & St. P. Ry. Co. v. City of Minneapolis, 115 Minn. 460, 133 N. W. 169, 51 L. R. A. (N. S.) 236; C. M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124; Twin City Separator Co. v. C. M. & St. P. Ry. Co. 118 Minn. 491, 137 N. W. 193; Bybee v. City of Minneapolis, 208 Minn. 55, 292 N. W. 617; C. B. & Q. Ry. Co. v. People ex rel. Drainage Commrs. 200 U. S. 561, 26 S. Ct. 341, 50 L. ed. 596; New Orleans Gas Light Co. v. Drainage Comm. 197 U. S. 453, 25 S. Ct. 471, 49 L. ed. 831; C. B. & Q. R. Co. v. Board of Supervisors (8 Cir.) 182 F. 291, 31 L. R. A. (N. S.) 1117.[8] None of the foregoing cases involved

[8]New Orleans Gas Light Co. v. Drainage Comm. *supra,* held that it was the uncompensated duty of a gas company to move its lines where they had been laid in a city street pursuant to a *franchise* from the city. The other cases respondent relies upon all held that it was the uncompensated duty of a railroad company to build bridges or otherwise accommodate its tracks to either highways, rivers, or drainage ditches.

These and similar cases involved primarily constitutional as distinguished from statutory considerations where it was held that the damage resulted from the exercise of the police power and that the principle of *damnum absque injuria* applied. They are based upon one of two grounds: (1) That

statutory law such as that presented here, providing that compensation shall be paid for all damage done to private property. Because our statutes governing drainage proceedings require compensation to all owners of private property who are damaged as the result of such proceedings, the principle of *damnum absque injuria* has no application in this case. See, In re Town Ditch No. 1, 208 Minn. 566, 295 N. W. 47. The natural right of a landowner in a natural watercourse to drain the upper lands of surface waters is likewise inapplicable where, as here, private property is taken or damaged by public authority and liability for such damage is fixed by statute.[9] It is well settled that a landowner's right of lateral support cannot be taken for a public

---

the public safety requires such action; and (2) that the duty attaches by implication as a condition of a *franchise* under which the corporation is operating.

Neither of these grounds is present in the instant case. See, Panhandle Eastern Pipe Line Co. v. State Highway Comm. 294 U. S. 613, 55 S. Ct. 563, 79 L. ed. 1090, rehearing denied, 295 U. S. 768, 55 S. Ct. 652, 79 L. ed. 1709 (reversing State Highway Comm. v. Panhandle Eastern Pipe Line Co. 139 Kan. 185, 29 P. [2d] 1104, rehearing denied, 139 Kan. 849, 33 P. [2d] 151) and Cities Service Gas Co. v. Riverside Drainage Dist. 137 Kan. 410, 20 P. (2d) 520, in both of which cases it was held that gas pipe-line companies were entitled to recover damages for the reasonable cost of relocating their pipe lines under circumstances similar to those presented here independent of statute and that to deny the pipe-line company damages therefor would be unconstitutional. Cf. Commonwealth v. Means & Russell Iron Co. 299 Ky. 465, 185 S. W. (2d) 960.

[9]As pointed out in In re Town Ditch No. 1, 208 Minn. 566, 568, 295 N. W. 47, 48, the right of natural drainage and flowage of surface waters considered by this court in Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, relates exclusively to private rights and activities and is not applicable to public drainage proceedings which are for the public benefit. For recent application of the rule of the Sheehan case, see Duenow v. Lindeman, 223 Minn. 505, 27 N. W. (2d) 421, and Enderson v. Kelehan, 226 Minn. 163, 32 N. W. (2d) 286.

use without just compensation.[10] As stated in Dyer v. City of St. Paul, 27 Minn. 457, 8 N. W. 272, the liability is to compensate "for any damage occasioned by removing that lateral support," and the expenses necessarily incurred by the landowner in protecting his property from such loss of lateral support is a proper element of damages. Berg v. Village of Chisholm, 143 Minn. 267, 173 N. W. 423.

Because here the damage to appellant's property "results from an exercise of the power of eminent domain, and in consequence the statute [M. S. A. 106.151] to say nothing of the constitution, requires compensation" (In re Town Ditch No. 1, 208 Minn. 573, 295 N. W. 50), the order of the trial court must be reversed.

Reversed.

---

[10]Nichols v. City of Duluth, 40 Minn. 389, 42 N. W. 84, 12 A. S. R. 743; McCullough v. St. P. M. & M. Ry. Co. 52 Minn. 12, 53 N. W. 802; Morgan v. City of Albert Lea, 129 Minn. 59, 151 N. W. 532; 18 Am. Jur., Eminent Domain, § 159; 20 C. J., Eminent Domain, § 151; 29 C. J. S., Eminent Domain, § 121.